PER CURIAM:
 

 Appellant William R. Turpin filed a voluntary petition in bankruptcy on December 16, 1976. On April 6, 1977, Appellee, the trustee in bankruptcy, filed a complaint against Turpin and City National Bank of Austin in the bankruptcy court. The complaint asserted that the bankruptcy trustee was entitled to certain funds held for the credit of Turpin by the bank as trustee of the Austin Neurosurgical Association Profit Sharing Plan Trust and the Austin Neuro-surgical Association Money Purchase Pension Plan Trust.
 

 These two trusts had been created by Turpin’s employer, the Austin Neurosurgical Association (a professional corporation), in order to provide retirement benefits to its employees. Both funds are qualified pension plans under the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001 et seq., and the Internal Revenue Code § 401 et seq. At the time the bankruptcy petition was filed, Turpin had been employed by the Association for seven years and pursuant to the trust agreements, the Association had contributed $66,931.82 to the Profit Trust and $42,780.56 to the Pension Trust on Turpin’s behalf.
 

 In his answer appellant admitted that these funds were held in trust for his benefit but denied that the bankruptcy trustee had acquired any rights to these sums upon his declaration of bankruptcy. Trial to the bankruptcy court was by written brief, the parties agreeing that there were no significant factual controversies involved and that
 
 *474
 
 the question whether the bankruptcy trustee had a claim to the funds could be determined as a matter of law.
 

 The bankruptcy court concluded that title to the trust funds credited to Turpin as of the date the petition was filed had passed to the bankruptcy trustee pursuant to § 70(a)(5) of the Bankruptcy Act. The bankruptcy court ordered that the trustee was entitled to receive that portion of the bankrupt’s retirement benefits attributable to pre-bankruptcy contributions by the employer, if, as, and when such benefits were ultimately paid to the bankrupt. The judgment of the bankruptcy court was affirmed by the district court.
 

 On appeal, Turpin argues that his interest in the trusts was not property which passed to the trustee under § 70(a)(5) and that the trustee has no present claim or future right to any of the funds. We agree.
 

 Section 70(aX5) of the Bankruptcy Act
 
 [1]
 
 formerly provided that
 

 (a) The trustee of the estate of a Bankrupt ... shall ... be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition [to] ... (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered. .. .
 

 This circuit has previously examined the question whether retirement benefits which a bankrupt is entitled to receive in the future fall within the category of property which passes to the trustee under § 70(a)(5).
 
 In re Nunnally,
 
 506 F.2d 1024 (5th Cir. 1975). In
 
 Nunnally,
 
 we concluded that the trustee had no claim upon such benefits, and we adhere to that conclusion today.
 

 Our decision in
 
 Nunnally
 
 was guided by three Supreme Court opinions which articulated principles for determining whether a particular asset is property transferred to the trustee under § 70(a)(5):
 
 Segal v. Rochelle,
 
 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966);
 
 Lines v. Frederick,
 
 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); and
 
 Kokoszka v. Belford,
 
 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). In these cases the court emphasized that the scope of the term “property” as used in § 70(a)(5) must be determined with reference to the distinctive purposes of the Bankruptcy Act. Although the primary purpose of the Bankruptcy Act may be “to secure for creditors everything of value that the bankrupt may possess in alienable or leviable form,”
 
 Segal,
 
 382 U.S. at 379, 86 S.Ct. at 515, the Act is also designed to provide the bankrupt with a clean slate — “to leave the bankrupt free after the date of his petition to accumulate new wealth in the future”
 
 id.,
 
 and thus to enable the bankrupt to “make an unencumbered fresh start.”
 
 Segal,
 
 382 U.S. at 380, 86 S.Ct. at 515.
 

 In light of this policy of providing the bankrupt with a clean slate, .the Supreme Court has reasoned that the bankrupt’s future wages and assets “designed to function as a wage substitute at some future period and during that future period to ‘support the basic requirements of life for [the debtors] and their families ....’”
 
 Kokoszka, supra
 
 417 U.S. at 648, 94 S.Ct. at 2435 (quoting
 
 Lines v. Frederick, supra
 
 400 U.S. at 20, 91 S.Ct. at 114), do not fall within the category of property which passes to the trustee pursuant to § 70(a)(5).
 

 In
 
 Nunnally
 
 we concluded that retirement benefits were assets designed to provide the bankrupt with a substitute for wages at some point in the future and thus the bankruptcy trustee had no claim to them under § 70(a)(5). We reach the same conclusion with regard to the benefits at issue here.
 

 Appellee would distinguish
 
 Nunnally
 
 on its facts, contending that
 
 Nunnally
 
 involved
 
 *475
 
 an individual of moderate means for whom the modest Navy retirement benefits were essential in order to make a “fresh start.” By contrast, Appellee argues, this case involves a highly paid professional and a larger sum of money. Appellee reasons that this individual, unlike Mr. Nunnally, does not need these retirement funds to make a fresh start.
 

 This reasoning misconceives the rationale of
 
 Nunnally
 
 and thus misses its application to this case. Our conclusion in
 
 Nunnally
 
 that giving title to the bankrupt’s retirement benefits to the trustee in bankruptcy would unduly hamper the bankrupt’s fresh start was not based on a belief that the retirement funds were necessary to get the bankrupt back on his feet in the period immediately following the bankruptcy. Indeed it appears that in
 
 Nunnally
 
 as here the bankrupt was not even entitled to receive any of these benefits until some time in the future. In
 
 Nunnally
 
 we concluded that awarding the bankrupt’s retirement benefits to the trustee would deprive the bankrupt of a genuine fresh start not because of the bankrupt’s immediate need for the funds but because to recognize the trustee’s claim against the funds would leave a cloud of pre-bankruptcy debt hanging over the bankrupt’s future. Providing the bankrupt with a “fresh start” means assuring him that assets to which he may become entitled
 
 in the future
 
 will be acquired free of any pre-bankruptcy obligations. Future wages may not be garnished to pay those obligations and pension benefits received in the. future, even though they may be the product of pre-bankruptcy contributions to a pension fund, are a substitute for future wages and thus pass to the bankrupt free of the claims of pre-bankruptcy creditors.
 

 Our conclusion in
 
 Nunnally
 
 that the bankruptcy trustee may not claim title to a bankrupt’s future retirement benefits under § 70(a)(5) still strikes us as a sound one and, in any event, it controls the outcome of this case. We reaffirm it today, we order that the judgment entered by the bankruptcy court and affirmed by the district court be reversed and we remand for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . This case arose under and is governed by the Bankruptcy Act as it stood prior to the recent enactment of a new bankruptcy code. The new code classifies the debtor’s right to receive pension benefits as exempt property “to the extent reasonably necessary for the support of the debtor and any dependents of the debtor.” 11 U.S.C. § 522(d)(10)(E).