**In re Richard Dale CLARK, Debtor.**

**Bankruptcy No. 3–81–01361.**

United States Bankruptcy Court,
E. D. Tennessee.

March 8, 1982.

Richard Stair, Jr., Knoxville, Tenn., Trustee.

R. M. Child, Knoxville, Tenn., for debtor.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in this case is whether the debtor may claim as exempt under either the Tennessee exemption statute, T.C.A. § 26–2–111(1)(D), or the Federal exemption statute, 11 U.S.C. § 522(d)(10)(E), funds held in a Keogh plan.

### I

On September 1, 1981, the debtor, Richard Dale Clark, filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 301. Pursuant to § 522(b) of the Code, the debtor claimed exemptions under Tennessee statutes, T.C.A. § 26–2–101 et seq. One exemption claimed by the debtor was a "Keogh Plan" in the amount of $50,000.00. T.C.A. § 26–2–111(1)(D). Thereafter, on November 10, 1981, the debtor filed an "Amendment to Schedule B–4," seeking to delete his initial claim of exemptions under Tennessee law and to claim the Federal exemptions as set forth at 11 U.S.C. § 522(d). Among the exemptions claimed by the debtor in the November 10, 1981, amendment is the Keogh Plan, claimed as exempt under 11 U.S.C. § 522(d)(10)(E).[1] The trustee has filed objections to the allowance of the debtor's claimed exemption in the Keogh Plan under either the Tennessee exemption statute or the Federal exemption statute. The trustee has also filed a general objection to the debtor's claim to the Federal exemptions under 11 U.S.C. § 522(d) as set forth in the "Amendment to Schedule B–4," for the reason that, pursuant to 11 U.S.C. § 522(b)(1), Tennessee has opted out of the Federal scheme of exemptions. T.C.A. § 26–2–112.

Tennessee's opt out from the Federal exemption statute has been challenged in the Middle District of Tennessee. *In re Rhodes,* 8 BCD 204, 14 B.R. 629 (Bkrtcy.1981). In that case Judge Hippe held that Tennessee's opt-out statute, T.C.A. § 26–2–112, exceeded the authority granted to the States by Congress in § 522(b)(1) of the Bankruptcy Code and was therefore invalid. Judge Hippe's decision is presently on direct appeal to the Sixth Circuit. This court will therefore determine the debtor's rights under both the Federal and Tennessee exemption statutes.[2]

### II

The debtor is 37 years of age. He is a physician duly licensed to practice medicine in the State of Tennessee, and was at the time of the filing of the bankruptcy petition, September 1, 1981, and is at present, actively engaged in the practice of medicine in Tazewell, Tennessee. He was not at the time of the filing of the bankruptcy petition nor is he at present receiving any payment or distribution pursuant to the provisions of

---

1. "(d) The following property may be exempted under subsection (b)(1) of this section:

    (10) The debtor's right to receive—
    (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor...."

2. If the Tennessee opt-out statute is ultimately held to be valid, the debtor, of course, would be limited to those exemptions specified in the Tennessee statutes, plus any property that is exempt under Federal law other than subsection (d) of § 522.

the Keogh Plan in which he participates through the Valley Fidelity Bank and Trust Company.

On December 16, 1977, Dr. Clark executed a Membership Agreement with the Valley Fidelity Bank and Trust Company whereby he adopted a participating Keogh Plan, i.e., a defined contribution or profit-sharing plan, administered by the Bank and known as the *Valley Fidelity Bank and Trust Company Master Trust and Retirement Plan for Self Employed Individuals,* as amended (hereinafter referred to as the "Trust"). Dr. Clark's participation in the Trust became effective January 1, 1977.[3] True copies of the Membership Agreement executed by Dr. Clark, the Trust, and a letter from the Internal Revenue Service acknowledging that the Trust qualifies as an acceptable plan under § 401 of the Internal Revenue Code, were all introduced through the testimony of Sharon Coffey, a trust officer of the Valley Fidelity Bank and Trust Company, and constitute a part of the record in this proceeding. After execution of the membership agreement, the debtor began making payments into the Trust on an annual basis, all of which have been deposited to an Investment Account, as opposed to an insurance account, as those terms are defined in the Trust. As of September 1, 1981, a sum in excess of $55,000.00 was on deposit in the Debtor's Investment Account, and it is this fund which the trustee asserts is not exempt under either State or Federal law.

### III

Section 541 of the Bankruptcy Code provides that the commencement of a case creates an estate—

"Such estate is comprised of all the following property, wherever located:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property formerly specified in § 70(a) of the Bankruptcy Act. The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest or leasehold interest. After the property comes into the estate, the debtor is then permitted to exempt it under § 522, and the court has jurisdiction to determine what property may be exempted and what remains as property of the estate. *See* H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 367, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5963, 6323.

This court first will consider the debtor's right to claim the Keogh funds as exempt under the Tennessee statute.

T.C.A. § 26–2–111 provides in pertinent part as follows:

"In addition to the property exempt under § 26–2–102, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

(1) The debtor's right to receive:

.   .   .   .   .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age, or length of service, unless:

(i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(ii) Such payment is on account of age or length of service; and

(iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

---

**3.** It appears that either the execution date or the effective date is incorrect. This, however, has no bearing on the issue before this court.

Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has *no right* or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less." (Emphasis added).

It must first be noted that the debtor is claiming the assets of the Trust as exempt rather than any periodic payment under the Trust. Thus, it is the proviso of paragraph (D) which has applicability. If the debtor is to exempt the assets of the Trust, he can do so only "to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are *not* exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less." (Emphasis added) T.C.A. § 26–2–111(1)(D).

The rationale of the Tennessee legislature in enacting subsection (D) of T.C.A. § 26–2–111(1) is apparent from a reading of the statute itself. The intention was to protect an individual's continued right to periodic income upon disability or retirement to the same extent such income was protected while that individual was an income-producing member of society. This conclusion is mandated by the initial wording of subsection (D) which grants the exemption: "To the same extent that earnings are exempt pursuant to § 26–2–106...." T.C.A. § 26–2–106 establishes the maximum amount of disposable earnings of an individual which are subject to garnishment during any work week.

Had the legislature not included the proviso in subsection (D), the Tennessee exemption relating to payments pursuant to pension plans would have been substantially the same as the Federal exemption set forth at 11 U.S.C. § 522(d)(10)(E). However, it appears the legislature recognized the necessity to deal not only with periodic payments under a plan, but also with the assets of the fund or plan from which such payments were to be made. Otherwise, those assets would be subject to execution to the extent permitted by applicable Tennessee law. For example, in the instant case, the court is dealing only with a master trust agreement, to which Dr. Clark makes periodic investments and which qualifies as a Keogh Plan under § 401 of the Internal Revenue Code. The fact that Dr. Clark has a participating Keogh Plan through this trust in no way gives the assets of that trust any greater immunity from execution by a judgment creditor than would be enjoyed by the settlor or beneficiary of any other trust. Nonetheless, the legislature has chosen by the proviso set forth at subsection (D) of T.C.A. § 26–2–111(1) to exempt the assets of a trust or plan from which pension payments are made, or are to be made, *provided* the criteria set forth in the proviso are met.

It is obvious from a review of the Trust that the debtor retained an option to receive the assets of the plan at age 59½ by way of a lump sum payment. Article X, Paragraph 2(d)(1), which is set forth at Page 25 of the Master Trust, provides as follows:

"*Article X—Payment of Benefits.*

(d) Each Member whose contributions have been invested in an Investment Account may elect prior to his Retirement to have the net value of the Investment Account distributed at retirement by one of the following methods of distribution or a combination thereof:

(1) By lump sum payment...."

As of the filing of his bankruptcy petition, the debtor had not made an election as to a method of distribution. The lump sum option was, however, available to him.

Further, Article X, Paragraph 1 of the Master Trust, which is set forth at Page 23, provides in pertinent part as follows:

"... If a distribution is made under a Participating Plan to a Member who was

or is an owner-employee before he reaches age 59½ for any reason other than his death or disability, no contributions shall be made for him under the Participating Plan during the Plan Year and for the next five (5) Plan Years."

This provision of the Trust clearly contemplates that a distribution of the assets of the Trust could be made to the debtor before age 59½. This conclusion is borne out by the testimony of Sharon Coffey, a trust officer at Valley Fidelity Bank, who stated that, indeed lump sum distributions had been made in the past prior to age 59½ upon request of a participating member of the Trust.

Counsel for the debtor argues tnat T.C.A. § 26–2–111(1)(D) effectively denies a citizen of this state a "fresh start." However, it is apparent that the contrary is true. The provision under consideration is a recognition by the legislature that there is a distinction between the payments made or to be made under a trust which forms the basis for a Keogh Plan and the assets which comprise the corpus of that trust. In making this recognition, the legislature has, in fact, granted the corpus of a trust created by a self-employed settlor which qualifies as a Keogh Plan under § 401 of the Internal Revenue Code an exemption status which is not accorded the settlor of other trusts which may contain similar provisions. Absent the provision set forth at T.C.A. § 26–2–111(1)(D) there would be no exemption status in Tennessee accorded the corpus of a qualified Keogh fund or plan as concerns the self-employed settlor.

In any event, neither of the two criteria set forth in the proviso has been met by the debtor. Accordingly, the corpus of the Trust is not exempt under T.C.A. § 26–2–111(1)(D).

## IV

Section 522(d)(10)(E) of the Bankruptcy Code, which apparently was the model for T.C.A. § 26–2–111(1)(D), provides that the debtor may exempt his right to receive

"a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, . . . . "

The debtor maintains that the assets in the Keogh plan are exempt under this subsection. In support of this position the debtor cites the case of *In re Donaghy*, 11 B.R. 677 (Bkrtcy.S.D.N.Y.1981). However, *Donaghy* is distinguishable from the present case on two grounds. First, the debtors in *Donaghy* received $21,992.87 in a lump-sum payment shortly before the commencement of the case. Judge Schwartzberg found the sum to be an identifiable fund which had not lost its character as a "pension fund payment." In the present case the debtor has no right to any present benefits, nor has he received any previous payment as had occurred in *Donaghy*. Second, Judge Schwartzberg had no difficulty in determining that the lump sum payment was reasonably necessary for the support of the debtors. John Donaghy was over 62 years old, unemployed, and afflicted with emphysema. His wife, 64 years of age, had incurred cancer-related medical bills in excess of $10,000 in the two years preceding the filing. The debtors' only source of income was $495.20 monthly disability payments from the Social Security Administration. After noting that the special needs of "retired, infirm and elderly debtors" should be taken into account, Judge Schwartzberg held that the identifiable funds previously received by the debtors from the pension plan were necessary for their support, hence exempt. 11 U.S.C. § 522(d)(10)(E).

The legislative history of § 522 indicates that the purpose of the exemption statute is to preserve for the debtor those assets necessary for a "fresh start" after bankruptcy. "The historical purpose of these exemption laws (state exemption laws) has been to protect a debtor from his creditors, to provide him with the basic necessities of life. . . . The purpose has not changed . . . there is a Federal interest in seeing that a debtor that goes through bank-

ruptcy comes out with adequate possessions to begin his fresh start." H.R. Rep.No. 95–595, 95th Cong. 1st Sess. 126, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6087.

In the instant case the debtor is 37 years of age and actively engaged in the practice of medicine. At the present time he is receiving no payments under the plan. Thus, the court is not required to determine whether payments are "necessary for the support of the debtor."

The debtor also urges this court to follow the decision *In re Turpin*, 644 F.2d 472 (5th Cir. 1981). *Turpin* is inapposite. While the case does concern funds held in two retirement trusts, the issue was whether the funds were property of the estate under § 70(a) of the former Bankruptcy Act rather than whether the funds could be claimed as exempt. The *Turpin* court relied on the case of *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), in which the Supreme Court held that property is not property of the estate under § 70(a) if the property is needed to "give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Id.* 400 U.S. at 19, 91 S.Ct. at 113. The Court held that accrued but unpaid vacation pay was not property of the estate because it was intended to support the basic requirements of life during a brief vacation period.

Aside from the fact that *Turpin* does not involve an exemption question, the decision is clearly distinguishable. Section 541 has broadened the scope of "property of the estate." A decision concerning property of the estate under former § 70(a) is not necessarily relevant to a decision concerning property of the estate under present § 541. In addition, the legislative history of § 541 specifically states that Paragraph (1) of § 541(a) has the effect of overruling *Lines v. Frederick, supra. See* H.R.Rep.No. 95–595, 95th Cong. 1st Sess. 368, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6324.

At no time has the debtor contended that the Keogh fund is *not* property of the estate under § 541. Thus, the sole question before the court is whether the Keogh assets can be exempted by the debtor.

A statement contained in a footnote in *In re Boderman*, 23 C.B.C. 302 (B.C.E.D.Pa. 1980), indicates that § 522(d)(10)(E) permits a debtor to exempt an IRA from property of the estate. The statement is dicta. Similarly, in *In re Mendenhall*, 4 B.R. 127, 6 B.C.D. 389 (Bkrtcy.D.Ore.1980), an Act case, the court states that a Keogh plan is not a *payment* under a stock bonus, pension, profit-sharing, annuity, or similar plan on account of illness, disability, death, age, or length of service. This statement is likewise dicta.

In a communication to the court dated February 10, 1982, counsel for the debtor cites the case of *Commercial Mortgage Insurance, Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510 (N.D.Texas 1981). Counsel does not analyze the holding of the court in that case but concludes that

> "the reasoning as set forth in the opinion of Judge Sanders would certainly preclude the Trustee's pursuit of this asset under State exemption laws and the Federal statutes referred to by Judge Sanders, read in the context of the Bankruptcy Code, would show a clear interest of Congress to exclude the benefits from passing to a Trustee in bankruptcy."

This court disagrees. As pointed out by the Trustee in a supplemental brief filed February 18, 1982, the *Commercial Mortgage* case was not decided in a bankruptcy context; thus, §§ 541 and 522 of the Bankruptcy Code were never considered. Further, the case does not purport to hold that a self-settled trust is beyond the reach of a trustee in bankruptcy.

*In re Witlin*, 640 F.2d 661 (5th Cir. 1981), the bankruptcy court held that three qualified Keogh plans were not exempt from the claims of creditors. The bankrupt was a doctor who was self-employed and who had contributed sums totaling $13,481.00 to his

own retirement plan. Each of the plans contained a Keogh plan statutory trust which provided that the benefits of the trust might not be assigned, alienated, nor subject to garnishment, execution or levy of any kind. At the time of bankruptcy, the funds were intact, no benefits having been drawn by the beneficiary. The bankruptcy judge concluded that the spendthrift trust provisions would have protected an employee-bankrupt if he had been employed by a person other than himself, but that since the employee was also the employer, nothing in the spendthrift trust provisions protecting the employee provided any protection for the bankrupt as settlor oi the trust. The district court and the Fifth Circuit affirmed. As recognized by the Fifth Circuit—

"There is, of course, a strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors. Many states have enacted statutes which give effect to this policy. See fn. to text, Bogert, at pp. 438–439. We find no Congressional policy that would counter the common law principle. If Congress had intended such Keogh plans to be exempt from attachment for the debts of the employer-settlor, it could easily have said so. Cf. 38 U.S.C. § 3101(a) which states that certain veterans' benefits 'shall be exempt from the claims of creditors.'" 640 F.2d at 663.

11 U.S.C. § 522(d)(10) specifically defines the exemptions to which a debtor in bankruptcy is entitled with respect to a stock bonus or pension plan.

Paragraph 8 of *Article XVI—Miscellaneous* at page 43 of the Master Trust involved in the instant case provides that: "Prior to distribution of a Member's interest hereunder, such interest of the member may not be anticipated, alienated, sold, transferred, assigned, pledged, or encumbered." Section 541(c)(1) and (2) of the Bankruptcy Code contains the following language:

"(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

█ With respect to the trust through which Dr. Clark established a Keogh plan in 1977, consideration must be given to the language of Paragraph 8 of *Article XVI— Miscellaneous*, which has been quoted above insofar as that provision purports to establish a spendthrift trust in Dr. Clark's favor. The courts in Tennessee have long held that a settlor cannot create a spendthrift trust for his own benefit. *Rose v. Third National Bank*, 27 Tenn.App. 553, 183 S.W.2d 1 (1944); and *McArthur v. Faw*, 183 Tenn. 504, 193 S.W.2d 763 (Tenn.S.Ct.1946).

Clearly, to the extent Paragraph 8 of Article XVI of the Trust purports to create a spendthrift trust, it is invalid in Tennessee as to the settlor/beneficiary, Dr. Richard Clark. Thus, such language does not create a restriction on the transfer of a beneficial interest of Dr. Clark in a trust which is enforceable under applicable nonbankruptcy law.

See also *Sheehan v. Sheehan*, 90 Misc.2d 673, 395 N.Y.S.2d 596 (1977).

This court concludes that the debtor may not exempt under § 522(d)(10)(E) the approximately $55,000 in the Keogh plan.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Trustee will submit judgment.