**In the Matter of Richard L. KOCHELL, Debtor.**

**Bankruptcy No. MM7-82-00560.**

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 23, 1982.

William Rameker, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for trustee.

David Moore, Brennan, Steil, Ryan, Basting & MacDougall, S.C., Janesville, Wis., for debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The present dispute is between the debtor and the trustee concerning the availability of two exemptions. The first exemption sought is under 11 U.S.C. § 522(d)(10)(E), for funds deposited in pension plans. The second is under 11 U.S.C. § 522(d)(3), for up to $200 in value in each of several items of household goods still in the possession of the seller of those goods.

The debtor in this chapter 7 case, Dr. Richard Kochell, is a 44-year-old medical doctor who has been employed by the Janesville Medical Center since 1975 and previously by the Janesville Women's Clinic. He has made contributions to two different pension/profit sharing plans. Between 1970 and 1975, while his income was between $50,000 and $100,000 per year, Dr. Kochell contributed an estimated $15,000 per year to a retirement plan sponsored by the Janesville Women's Clinic. The total principal amount in that account is approximately $75,000 and the interest accrued is approximately $120,000. Since 1975, he has made estimated annual contributions of $1,700 to a retirement fund maintained by the Janesville Medical Center. The balance in that account is approximately $7,400. Dr. Kochell testified that he decreased his annual contributions after 1975 because he had increased living expenses and he felt that the first plan would continue to grow to be adequate for his retirement.

Dr. Kochell has no other retirement plan but has or had life insurance in the amount of $850,000 some of which may have been cashed in by his ex-wife and some of which is pledged to different banks. Additionally, he is covered by policies which would pay $5,000 per month upon his total disability.

Dr. Kochell testified that his average gross income is $36,000 per month. However, this estimate may be low, in light of his testimony that his gross income was $380,000 in the 10 months prior to August of 1982.

Dr. Kochell further testified to the following average monthly living expenses for himself and the three dependent children in his custody:

| | |
|---|---|
| $12,000 | Federal income tax |
| 3,000 | State income tax |
| 1,000 | Real estate taxes |
| 2,300 | Insurance expense |
| 4,200 | Mortgage payment |
| 1,500 | Alimony |
| 1,300 | Reaffirmation to Weitzel (home builder) |
| 2,200 | Reaffirmation on guaranty of a corp. debt |
| 750 | Tuition for one child |
| 630 | Housekeeper |
| 1,000 | Heat and electricity |
| 250 | Phone |
| 1,000 | Attorney's fees |
| 500 | Accountant's fees |
| 700 | Leased Cadillac |
| 300 | Interest to Bank of Wisconsin |
| 250 | Gas |
| 100 | Medicine, medical bills |
| 220 | Orthodontist |
| 500 | Food |
| 500 | Clothing |
| 200 | Maintenance on house |
| $34,000 | |

The only additional expenses cited were those arising from professional meetings and maintenance of his license to practice which total approximately $1,000 per year. Using these figures Dr. Kochell, by his own admission, has approximately $1,500 per month of income which is not required for current living expenses.

Dr. Kochell seeks to exempt assets in both of his pension funds under 11 U.S.C. § 522(d)(10)(E), which provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—. . . .

The trustee objects to the entire claimed exemption on the basis that it is not "reasonably necessary for the support of the debtor [or] any dependent. . . ."

The debtor argues that the exemption should be construed broadly, and that the court should consider the debtor's needs over the long term, not just in connection with his present financial situation. For example, he raises the possibility that in the event of his death or disability he might be unable to provide for the education of his three children. The evidence did not suggest that this possible misfortune was even moderately probable. It would seem that the future would contain a more frightening uncertainty for 99.9 percent of the American population. If Congress intended the exemption to be broad enough to encompass all contingencies, it would not have included the limiting words "reasonably necessary for the support of the debtor." Although the exemption provisions of 11 U.S.C. § 522 should be broadly construed in favor of the debtor, the purpose of the exemptions is to protect the fresh start of the debtor following bankruptcy, not to insure that no future misfortune could possibly lower the standard of living to which the debtor's dependents have become accustomed.

■ It is impossible to see how the pension funds can be considered "necessary for the support of the debtor." Dr. Kochell is not currently drawing on the funds. *See In Re Clark*, 18 B.R. 824, 829, 8 B.C.D. 1207 (Bkrtcy.E.D.Tenn.1982). His budget shows that he has income of at least $1,500 per month beyond that which is required for his current living expenses. The presence of that surplus indicates not only that the pension fund is not necessary for the current support of the debtor, but that a pension fund could be easily reestablished. If Dr. Kochell were to contribute $1,500 per month for four or five years a sum compa-

rable to the principal contained in his present pension fund would be established. Thus, even under the broadest reading of the exemption, the court can not conclude that the current fund is exemptable. *Compare In Re Donaghy,* 11 B.R. 677 (Bkrtcy.S. D.N.Y.1981).

Dr. Kochell also seeks to exempt as household goods certain carpeting, furniture and art objects which are presently being held by E.W. Rost & Son ("Rost"), a furniture store in Janesville. The merchandise was ordered by Dr. Kochell's former wife during their marriage for the purpose of furnishing a home which was under construction. None of the purchases were from the store's regular inventory. All were custom ordered and shipped to Rost.

Mr. William Lee, the store owner, testified that by agreement a 50 percent deposit was to be paid by the Kochells upon placing each order and the remainder of the price was due upon delivery of the furnishings. Rost was unable to finance the extensive purchases at wholesale under this agreement and went to the Bank of Wisconsin for financing. The Bank, although unwilling to lend money to Dr. Kochell, was willing to make a loan to Rost, secured by the furniture ordered for the Kochells and a second mortgage on the Kochell's new home. When the Bank and Rost became concerned with Kochell's financial situation, all parties agreed that furniture would be released to the Kochells only upon receipt of payment. It was agreed that Rost would continue to hold furniture with a value double the amount owed by the Kochells. In this way the Bank hoped to remain fully secured.

Many items have since been paid for and delivered. The remaining items held by Rost have a total price of $42,000 and a current retail value of approximately $18,000. The remaining debt to Rost is $17,642. Some of the furniture is depreciating in storage and much of it would be difficult to resell in Janesville.

Dr. Kochell seeks to exempt up to $200 in value in each item now held by Rost under 11 U.S.C. § 522(d)(3) which provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

(3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

The first issue is whether Kochell has any interest which may be exempted in the furnishings held by Rost. Although there was no evidence that the title to the furniture had passed to Kochell, under Wis. Stat. § 409.202, title to collateral is immaterial for purposes of article 9. The only parties which could claim an interest in the furniture are Rost, the Bank, and Kochell. The interest which Rost and the Bank claim is at most a possessory security interest, rather than an ownership interest.[1] Having made a 50 percent deposit with each order, Kochell's interest appears to be at least that of a layaway purchaser. No cases have been found which consider whether such an "interest" is exemptible under 11 U.S.C. § 522. The Seventh Circuit Court of Appeals, however, has held that there is no difference between property of the estate as defined by 11 U.S.C. § 541 and property which may be exempted under 11 U.S.C. § 522. *In Re Smith,* 640 F.2d 888, 7 B.C.D. 419 (7th Cir.1981). That court held a cause of action could be exempted as "any property" under the "spillover" exemption of 11 U.S.C. § 522(d)(5). Since 11 U.S.C. § 541(a)(1) brings into the estate "all legal or equitable interests of the debtor in property as of the commencement of the case," Kochell's interest in the right to complete the purchase of furniture should be exemptible, notwithstanding the fact that title has not passed. To separate, as the trustee suggests we should, the right to complete

1. Wis.Stat. § 409.203 provides that a security interest does not attach unless:

  a) The collateral is in the possession of the secured party pursuant to agreement ... and

  b) Value has been given; and

  c) The debtor has rights in the collateral.

the purchase of home furnishings from the actual furnishings held by Rost as a means of distinguishing the categories of exemption set out in 11 U.S.C. § 522(d) is a feat of legal legerdemain in which I will not engage.

The second issue concerning the applicability of 11 U.S.C. § 522(d)(3) is whether the furnishings are truly household goods while they are held in storage for security. I have found no cases which considered whether goods must actually be present in the debtor's home to come within this exception. There is no dispute that the furnishings were purchased or are being purchased for use in Kochell's new home. The furniture store's possession of the goods should not be relevant to the question of the nature of those goods. The only limitations upon the application of 11 U.S.C. § 522(d)(3) are: 1.) that the debtor's interest may not exceed $200 in value in any particular item, and 2.) that the items are held primarily for personal, family, or household use of the debtor or a dependent of the debtor. *See In Re Wahl*, 14 B.R. 153, 8 B.C.D. 98 (Bkrtcy.E.D.Wis.1981). Thus, the claim of exemption in the furnishings should be allowed.