**In re Kenneth Walter MILLER, Debtor.**

**Bankruptcy No. 3–83–500.**

United States Bankruptcy Court,
D. Minnesota.

Sept. 6, 1983.

Michael J. Iannacone, St. Paul, Minn., Trustee.

Neal H. Nelson, Jr., Nelson & Nelson, St. Paul, Minn., for debtor.

## ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the trustee's objection to the debtor's claim of exempt property. Michael Iannacone, the trustee, appeared *in propria persona* and Neal H. Nelson, Jr. appeared on behalf of the debtor. Based on the evidence at the hearing and the argument of counsel, I

make the following memorandum order pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

The debtor is a 54 year old single man who has been employed by the St. Paul Companies, Inc. (company) since December 3, 1947. His current gross annual salary is approximately $27,800 with a net annual salary after deduction for taxes, FICA and various insurance and other benefits of $16,900 or $1,400 per month. He testified to expenses of a little over $1,000 per month. When the debtor filed his Chapter 7 bankruptcy petition on March 21, 1983, the company maintained both a profit sharing plan and a pension plan.

On the filing date, the balance in the debtor's profit sharing account was $3,120.03, consisting totally of contributions by the company. Although the plan allows for contributions by the employee, the debtor had no balance in the plan from his contributions when he filed, either because he had never made any such contributions, or if made, he had withdrawn them. The profit sharing plan provides that the employee may elect to take up to half of his annual profit share in cash. The balance automatically goes into the plan. The company's contributions can be withdrawn to purchase a primary residence, for capital improvement of a primary residence, to pay for college education of the employee or a dependent, to cover unreimbursed medical or dental expenses, or relieve some other financial hardship. (Exhibit B)

Part B of Exhibit A, Participants Status Report, indicates that the currently withdrawable amount is $887.76 with the total amount of $3,120.03 withdrawable for other reasons specified including hardship. The employee may also collect 100% of the amount on deposit on retirement, disablement or on leaving the company.

The payments to the pension plan trust fund are made entirely by the company. An employee becomes fully vested after ten (10) years of service or at age 62. Normal retirement age is 65 with maximum retirement benefits accrued after 30 years of service. Early retirement results in a 5% reduction on the retirement benefits for each year that payments begin before age 65. However, an employee, such as the debtor, with 30 or more years of service, can retire with full benefits at age 62. Once an employee is fully vested, the employee is entitled to receive benefits beginning at age 65 or as early as age 55 with 20 or more years of service. If the debtor had terminated his employment on the date he filed his bankruptcy petition, he would be entitled to receive pension payments beginning with his 55th birthday in July of 1984. He would be entitled to receive $353 a month or an estimated lump sum payment of $38,000.[1] (Exhibit C). There was no evidence as to any other amounts to which the debtor would be entitled based on other assumptions such as retirement at age 62, age 65 or some other age. Presumably they would all be higher than the figures just stated.

## CONCLUSIONS OF LAW

### A

11 U.S.C. § 541(a)(1) states that a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case". The case law indicates, and the debtor concedes, that the amounts in the profit sharing plan and the debtor's rights under the pension plan are property of the estate. *See In re Threewitt*, 20 B.R. 434, 437 (Bkrtcy.D.Kan. 1982); *In re Hinshaw*, 23 B.R. 233, 234 (Bkrtcy.D.Kan.1982); *In re Clark*, 18 B.R. 824, 827 (Bkrtcy.E.D.Tenn.1982).

Once included in the estate, the debtor may claim the property as exempt pursuant to 11 U.S.C. § 522(b)(1) or § 522(b)(2).[2]

1. This calculation assumes a 9½ percent interest rate.

2. The alternative exemptions are commonly referred to as "federal exemptions" and "state exemptions" respectively. Those references are misnomers, however, since § 522(b)(2) includes exemptions under federal law other than those found in § 522(d) as well as exemptions provided by state or local law. The alternative

The debtor in this case has chosen the bankruptcy exemptions.[3] He has claimed both the funds in his profit sharing plan and his right to receive payments under the pension plan as exempt pursuant to § 522(d)(10)(E).[4] Section 522(d)(10)(E) provides,

(d) The following property may be exempted . . .

(10) The debtor's right to receive—

(E) A payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . .

11 U.S.C. § 522(d)(10)(E).[5]

I will discuss the profit sharing plans and pension plans separately.

## B

■ The profit sharing plan is really a savings account established on behalf of the debtor by the company. The company makes some deposits in the account and the debtor has the right to make deposits in the account. While the amounts frequently will remain on deposit until the employee resigns or retires, it is available for current use by the debtor. The debtor does not have any need to withdraw the amounts in the profit sharing plan since his net income is sufficient to meet his present expenses. Likewise, because of the small amount involved and because of the existence of his pension plan and the right to social security

and his age, he has no foreseeable future need to withdraw funds from the profit sharing plan. Thus I find that none of the debtors profit sharing plan is reasonably necessary for the support of the debtor.[6]

Therefore, the debtor may not exempt any of his interests in the profit sharing plan under § 522(d)(10)(E). Thus the trustee succeeds to the debtor's interest in the pension plan as of March 21, 1983 giving him the right to withdraw $887.76 as of right as well as the balance to cover unreimbursed dental or medical expenses or relieve financial hardship, or alternatively, to receive the total amount on the debtor's resignation or retirement. The debtor apparently had one small unreimbursed medical bill from United Hospitals, Inc. in the amount of $104.28 for which he could have chosen to withdraw funds from the profit sharing plan, but did not. The trustee may now do so in his stead. It is also quite obvious that on March 21, 1983, the debtor was in need of relief from financial hardship. He could have chosen to withdraw the total amount in his profit sharing plan to help relieve that financial hardship, but chose not to and instead file bankruptcy and obtain relief that way. The trustee may now exercise the right that the debtor had to withdraw those funds to relieve the debtor's financial hardship, subject to approval of the plan administrators.[7]

## C

■ The pension plan raises some more difficult problems. First, the trustee ar-

---

exemptions might more properly be referred to as "bankruptcy exemptions" and "non-bankruptcy exemptions".

3. Minnesota is one of the minority of states which has not exercised its right provided by § 522(b)(1) to "opt out", i.e. prohibit its residents from claiming the bankruptcy exemptions.

4. The debtor's original Schedule B–4 as well as his amended Schedule B–4 both erroneously cite 11 U.S.C. § 522(d)(9)(E). § 522(d)(9) provides an exemption for professionally prescribed health aides. Clearly the citation was meant to be § 522(d)(10)(E) and no issue has been raised by the trustee as to the erroneous citation.

5. Part or all of the debtor's interest in the profit sharing plan and pension plan could have been exempted under 522(d)(5), the so-called "pourover" or "wild card" exemption. However, the debtor has so far chosen not to do so.

6. The debtor is single, has no children and apparently has no other dependents.

7. The approval of the plan administrators must be given on the assumption that the request is being made by the debtor based on the financial situation at the time of filing bankruptcy. The plan administrators may not discriminate against the trustee or withhold its approval based on the fact that the debtor filed bankruptcy.

gues that the plan may not be exempted at all because of the exception to exemptability provided in § 522(d)(10)(E) which provides that pension plans may be exempted unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; *and*

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

(emphasis added). 11 U.S.C. § 522(d)(10)(E).

The trustee claims that because the payment under the pension plan is on account of age or length of service that the pension plan may not be exempted at all. However, the trustee misreads the three subsections. They are joined by the word, "and" and thus in order to be excepted from exemptability, all three criteria must be met. It is conceded that the plan was not established by or under the auspices of an insider and thus criterion (i) is not met and the exception does not apply.

We are, therefore, left with the issue of whether the debtor's right to receive payments under his pension plan is reasonably necessary for his support. The trustee argues that the determination must be made as of the date of the filing of the bankruptcy. Since the debtor was employed at the time he filed bankruptcy with an income sufficient to support himself, the trustee argues that the debtor's pension was not necessary for his support. I agree with the trustee's contention that the payments under the pension plan are not currently necessary for his support, however, I disagree with the trustee that that is the sole test.

The statutory provision itself is ambiguous and the few reported cases are not particularly helpful. *In re Taff,* 10 B.R. 101 (Bkrtcy.D.Conn.1981) and *In re Donaghy,* 11 B.R. 677 (Bkrtcy.S.D.N.Y.1981), both in-

volved debtors who were already retired and had received or were currently receiving their pension benefits when they filed bankruptcy. *In re Lowe,* 25 B.R. 86 (Bkrtcy.D.S.C.1982); *In re Howerton,* 21 B.R. 621 (Bkrtcy.N.D.Tex.1982), and *In re Hinshaw,* 23 B.R. 233 (Bkrtcy.D.Kan.1982) all involve claims under state exemption laws and do not raise the issue of whether or not the language regarding whether the payments are reasonably necessary for the support of the debtor applies to the future. Two cases, both involving physicians, seems superficially to support the trustee's contention. *In re Clark,* 18 B.R. 824 (Bkrtcy.E.D. Tenn.1982) and *In re Kochell,* 26 B.R. 86 (Bkrtcy.W.D.Wis.1982). In *Clark,* the court said "in the instant case, the debtor is 37 years of age and actively engaged in the practice of medicine. At the present time he is receiving no payments under the plan. Thus, the court is not required to determine whether payments are 'necessary for the support of the debtor'." 18 B.R. at 829. The court in *Kochell* stated "the presence of that surplus ($1,500 per month) indicates not only that the pension fund is not necessary for the current support of the debtor, but that a pension fund could be easily re-established." 26 B.R. at 87.

A careful reading of both opinions, however, discloses that both courts relied heavily on the young age of the debtors and thus their distance from retirement and their substantial incomes which would enable them to replenish their retirement plans sufficiently to provide for their retirements. I think that Congress intended these provisions to look to the debtors future needs as well as the debtor's current needs. In fact, the legislative history indicates that § 522(d)(10) deals with "benefits that are akin to future earnings of the debtor." H.R.Rep. 95–595, 95th Cong. 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. If it is true that this section deals with the right to future payments, then certainly the necessity for the debtor's support should also be considered in the future when the payments will be received.

Having concluded that I can look to the future retirement needs in considering exemption, I am still faced with the issue of how to decide what is reasonably necessary for support. As noted, there is no definition of "reasonably necessary for support."[8] Basically I agree with the court in *Taff* when it said that the amount which should be exempt "ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim." *In re Taff,* 10 B.R. 101, 107 (Bkrtcy.D.Conn.1981). In the present case, I find that $353 per month, even when augmented by the additional benefits which will accrue as the debtor continues work is reasonably necessary for his support.[9]

In short, I do not feel that Congress intended to deny a debtor such as this one the right to exempt his pension. I think Congress had in mind circumstances under which an officer of a large corporation or a professional person could accrue very large vested pension benefits beyond that which would be reasonably necessary for their support.[10] The debtor's claim of exemption of his rights to payments under his pension plan from the St. Paul Companies is sustained.[11]

Based on the foregoing,

IT IS ORDERED:

1. The debtor's interest in the St. Paul Companies, Inc. profit sharing plan is not exempt under 11 U.S.C. § 522(d)(10)(E).

2. The debtor's right to receive payments from the St. Paul Companies, Inc. pension plan is exempt under 11 U.S.C. § 522(d)(10)(E).

---

**8.** The bankruptcy exemptions provided in § 522(d) are derived in large part from the Uniform Exemption Act, promulgated by the Commissioners of Uniform of State Laws in August 1976. H.R.Rep. 95–595, 95th Congress, 1st Sess. 361 (1977). Section 6(b) of the Uniform Exemptions Act defined the phrase "property to the extent reasonably necessary for the support of (the debtor) and his dependents" to mean

property required to meet the present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

Uniform Exemptions Act § 6(b), 13 U.L.A. 365, 382 (1979).

**9.** I assume that the debtor will also be entitled to receive social security benefits in an amount which does not appear in the record. The absence of evidence on the amount of social security benefits is consistent with my decision that the pension is reasonably necessary for the debtor's support. The trustee bears the burden of proving that the exemptions are not properly claims. B.R. 4003(c). However, social security benefits are not noted for their generosity and I would feel safe in finding that the debtor's pension payments will still be reasonably necessary for his support even when added to his social security benefits.

**10.** *See* Plumb, *The Recommendations of the Commission on the Bankruptcy Laws—Exempt and Immune Property,* 61 Va.L.Rev. 1, 59.

**11.** I am not at all sure how the trustee would have proceeded if the pension plan had been determined to be not exempt. The trustee's rights are the same as the debtors would have been; the right to have received payments on the debtor's retirement. While that conceivably could have happened as early as July 1984, it is unlikely that it would have occurred because of the substantial decrease in pension benefits resulting from early retirement. Thus in order to realize on the nonexempt property, the trustee would have to keep the case open indefinitely waiting for the debtor to retire. Assuming the debtor did not die first, in which case the trustee would receive nothing, on the debtor's retirement, the trustee would begin receiving $353 per month for distribution to the creditors. I am not sure that that would have been a very satisfactory result.