In re Marion Kathlene
**SEDERSTROM, Debtor.**

**Bankruptcy No. 4–84–1861.**

United States Bankruptcy Court,
D. Minnesota.

Feb. 15, 1985.

Ronald H. Groth, Minneapolis, Minn., for Trustee.

Cass S. Weil, St. Paul, Minn., for debtor.

## ORDER DISALLOWING EXEMPTION

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the trustee's objection to the debtor's claim of certain exemptions. Ronald H. Groth appeared for Dwight R.J. Lindquist, the trustee, and Cass S. Weil appeared for the debtor.

The debtor filed her Chapter 7 bankruptcy petition on October 19, 1984. With her petition she filed her schedules including a schedule B–4 in which she claimed certain property exempt. Among her claims of exempt property were a homestead pursuant to Minn.Stat. § 510.01, some Lutheran Brotherhood tax sheltered annuities pursuant to Minn.Stat. § 550.37, subd. 24, and her teacher's retirement fund. No statutory basis was stated for the last exemption claim.

On January 15, 1985, the trustee filed objections to all three of those exemption claims and on February 6, 1985, a hearing was held on the trustee's objections. At the hearing the trustee and the debtor agreed that the objection to the homestead exemption claim was based only on ambiguity in the schedules and would therefore be withdrawn. Likewise it was agreed that the debtor's teacher's retirement account was exempt under Minn.Stat. § 354.10.

*See In re Werner,* 31 B.R. 418 (Bktcy. Minn.1983).

This leaves only the trustee's objection to the debtor's claim of exemption in her Lutheran Brotherhood annuities. The debtor claims those annuities exempt under Minn. Stat. § 550.37, subdiv. 24, which provides an exemption for

> the debtor's right to receive a payment under a stock, bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The debtor is 57 years old and is currently working as a high school teacher in the Litchfield public schools. She will be required to retire at age 65 from that job. Her salary during the last school year was $30,754.01. She also earns approximately $370.00 per month as a Mary Kay cosmetics salesperson. Upon her retirement at age 65 the debtor will receive retirement benefits from the Teachers Retirement Association of $1,225.20. Her estimated social security benefits at age 65 are $750.00 per month.

There are three annuities at issue: contract number B1892769 was purchased by the debtor on October 22, 1981, and is a single premium annuity. Its cash value on December 31, 1984, was $7,967.41. The annuity matures in 1993 at which time the guaranteed income based on the current value and the guaranteed interest rate of 3½% will be $63.00 per month. If interest rates exceed 3½%, obviously the accumulations will be higher and the monthly income greater.

Contract number B1999275 was purchased March 9, 1983. This contract is also a single premium contract with a cash value on December 31, 1984, of $6,262.58. Guaranteed income at maturity in 1994 is $50.08 per month.

Contract number B1999276 purchased March 3, 1983, is a flexible premium annuity with a cash value on December 31, 1984, of $4,822.22. However, that amount reflects contributions by the debtor after the filing of her petition on October 19, 1984, of $600.00 and therefore the cash value on filing was approximately $4,200.00. If the debtor continues to make payments of $200.00 per month until maturity in 1994, then her guaranteed income would be $188.79. However since such values and computations would appropriately be made as of the date of the filing of the petition without considering any post-petition contributions, the guaranteed income on the date of filing was obviously much less than that and was probably more like $40.00 per month.

Thus on October 19, 1984, the total additional guaranteed future income from the annuities was approximately $150.00 per month although admittedly will probably be higher as a result of actual interest rates which will probably be more than 3½ % between now and 1994.

First, it is not obvious to me that, in spite of the fact that these types of investments are denominated as annuities, that these are the types of investments which the State Legislature had in mind in enacting subdivision 24. Even if these are investments which the debtor has made for the purposes of providing for her retirement, they really are more in the way of investments no different from stocks, bonds, or other real estate which a person might invest in to provide for her retirement. However the trustee has not made an issue of this and since I am disallowing the exemption on other grounds anyway, I need not squarely face that issue.

Subdivision 24 was added to Minn.Stat. § 550.37 by Chapter 599 of Minnesota Laws of 1980 and was a reaction to the enactment of new bankruptcy exemptions. Various amendments were made by the 1980 legislature to conform the state exemptions to those provided in § 522(d) of Title 11 and in some instances make them broader. *In re Carlson,* 40 B.R. 746 (Bktcy.Minn.1984). Subdivision 24 is basically the same as 11 U.S.C. § 522(d)(10)(E) without the limiting provisions found in the latter. Thus I feel comfortable assuming

subdivision 24 should be construed in the same manner as § 522(d)(10)(E).

■ Although the sections refer to the right to receive payments and require determination of the necessity for the support of the debtor and the debtor's dependents, those judgments can be made at some future date and need not be limited to a determination of the present needs of the debtor. Obviously if it was only the present needs that were to be determined, annuities would not at all be necessary. However if we look to the future and the debtor's retirement, then the analysis becomes somewhat different. Since subdivision 24 talks typically about future payments I think that it is only fair to look to future needs. *See In re Miller,* 33 B.R. 549 (Bktcy.Minn.1983).

■ In determining what is necessary for support I think that we need to determine what amount of income ought to be sufficient to sustain basic needs, not related to the debtor's former status in society or the lifestyle to which the debtor is accustomed but taking into account the special needs that a retired and elderly debtor may claim. *In re Bari,* 43 B.R. 253, 255–256 (Bktcy.Minn.1984); *In re Miller, supra,* at 553; *In re Taff,* 10 B.R. 101, 107 (Bktcy. Conn.1981). Applying that standard I cannot conclude that the annuities are reasonably necessary for the debtor's support or the support of her dependent. The debtor estimates that she will have the following future expenses on retirement:

| | |
|---|---|
| Home mortgage | $350.00 |
| Utilities | $425.00 |
| Food, clothing, and other supplies | $500.00 |
| Transportation | $500.00 |
| Mother's nursing home expenses | $500.00 |
| Life insurance on Donald Sederstrom | $300.00 |
| Newspaper and other periodicals | $ 25.00 |
| Church contributions | $100.00 |

While these expenses total $2,700.00 and her other income on retirement is only $2,000.00, I think that the expenses listed exceed the basic needs test.

■ The home mortgage referred to is not a current mortgage on the debtor's home. Rather it is an estimate of a monthly mortgage payment that will result from future borrowing in order to pay what the debtor estimates to be $20,000.00 for her husband's tax liability. I do not think that this is appropriately figured in to basic needs expense.

■ The debtor also claims transportation expenses of $500.00 which she says she figured on the basis of current experience. However the car is currently used to drive back and forth to work and in her employment as a Mary Kay cosmetics salesperson. When she retires from teaching she will no longer have the daily round trip to work, and either will also retire from her part time job as a Mary Kay cosmetics salesperson which will eliminate the need of the car for that, or if she keeps that job on retirement, she will continue to generate income to offset the expense. Thus I think that a more reasonable transportation expense is $200.00 per month.

■ The debtor lists $300.00 a month for a life insurance premium on her husband's life. While possibly a wise estate planning decision, it is not necessary for her basic support or that of her dependents and therefore is not something that can be purchased at the expense of her creditors. Likewise church contributions while they may be appropriate are not part of basic needs nor appropriately made at the expense of creditors. Thus, eliminating the life insurance premiums, the church contributions and reducing the transportation expense to $200.00 the monthly estimated expenses, even including the home mortgage, would be $2,000.00 per month or the same as her projected income. I also note that the debtor apparently intends to continue making contributions on her flexible annuity contract and obviously if she is in a position to do that, then she can buy a new contract and make those payments and build up an additional retirement income for herself.

Therefore, I conclude that the annuities are not reasonably necessary for the support of the debtor or her dependents.

THEREFORE, IT IS ORDERED; the debtor's exemption claim in the three Lutheran Brotherhood annuity contracts is disallowed.