## CHARLES C. WENZEL *vs.* BERYL D. POWDER ET AL.

*Restraint on Alienation—Deed Held Not to Create a Spendthrift Trust —Right of Creditor of Cestui Que Trust—Termination of Trust.*

The general rule is that when one has an interest in property which he may alien or assign that interest, whether legal or equitable, is liable for the payment of his debts.

When a trustee is directed to apply the whole income of a trust estate to the support of a beneficiary the latter is entitled to all the income, and it may be aliened by him.

Property was conveyed to a trustee with directions to apply the income to the support and maintenance of the grantor and his wife and children, and after the death of the grantor and his wife, the principal to become the property of their children, the issue of any deceased child to take its parent's share. After the death of the grantor leaving two daughters, his wife conveyed to them her interest in the property. *Held,* that the deed did not create a spendthrift trust, since the whole income was given to the *cestui que trust* without any discretion in the trustee as to its application and the statement of the purpose for which it was given does not restrict the right of the *cestui que trust* to alien the same, and that consequently the income is liable for the debts of the beneficiaries during the lifetime of the grantor's wife.

*Held,* further, that the trust is not at an end, since there is a contingent limitation over to the children of the daughters who may come into being during the life of the settlor's wife, should either of the daughters die, leaving issue during the life of the widow.

Appeal from the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD and SCHMUCKER, JJ.

*S. S. Field,* for the appellant.

It is to be observed that Moses H. Powder did not intend to protect the property against the improvidence of his children, or to keep it from *their* creditors, for he gave the *principal* absolutely to them, in remainder. It does not appear that he desired to protect it from his own creditors, or that he had any creditors; but the obvious purpose of the deed was to protect the property from *his own* improvidence; to prevent *himself* from spending the principal, and thus have the income for the support of himself and wife during their lives, and preserve the principal for their children. So that if the deed be construed to enable the children to beat *their* creditors, it will accomplish a purpose never contemplated or intended by its maker. There is no provision in the deed denying or restricting the power of the *children* to assign or alien *their* interests, nor is there any clause providing that the income shall not be taken for *their* debts.

The purpose of every equitable life estate is the "support and maintenance" of the beneficiary, and merely using that expres-

sion does not render the life tenant's interest inalienable, or place it beyond the reach of his creditors. The Court will notice that, in this deed, there is no *discretion* in the trustee, as to *how much* he will apply, *no direction to accumulate* or otherwise dispose of any of the income, but the provision is that the trustee is to collect "*all* the rents, issues, income, etc.," "and apply the same," that is, *all* of it, "to the support and maintenance" of the beneficiaries.

Such a provision creates in the beneficiaries simply an equitable interest, with the ordinary power of disposition and liability to the beneficiary's debts incident thereto. In *Slattery* v. *Wilson*, 151 Mass. 266; s. c., 7 L. R. A. 394, the distinction is clearly drawn between a trust that the trustee shall apply *so much of the income as may be necessary* to the support and maintenance of A; and a trust to apply *all the income* to A's support and maintenance. In the former case A has no definite interest which his creditors can reach; in the latter A has an equitable estate in all the income, which is liable for his debts.

In *Maynard* v. *Cleaves*, 149 Mass. 307, where testator gave the income of his property to his widow for life, "to be for her comfort and support," it was held liable in equity to her creditors. In *Thompson* v. *Ballard*, 70 Md. 10, the trust was "that the said trustees shall appropriate and apply the net rents, issues, incomes and profits derived from said trust property and premises, to the use, benefit, support and maintenance of the said Robert F. Thompson" for life. It was held that Robert F. Thompson had an equitable life estate which passed to, and *was sold by his* trustee in insolvency. See also *Warner* v. *Rice*, 66 Md. 436.

Moses Hindes Powder being dead, leaving only two children, the appellees, and his wife having conveyed all her interest to Sarah Danskin, and the latter having conveyed it to the appellees ; the appellees are the equitable life tenants (for their mother's life) of the *whole* income (unless the trust was terminated by their acquisition of their mother's interest.) 1 *Perry on Trust*, sec. 386; *Burt* v. *Gill*, 89 Md. 145; *Young-*

*husband* v. *Gisborne*, 28 E. Ch. Rep. (1 Coll.) 401. In the latter case VICE CHANCELLOR KNIGHT BRUCE tersely states the law in the form of a question: "If I create a trust for the maintenance and clothing of a male adult of sound mind, is it anything more than a general trust for his benefit?"

The appellees, being the owners of an equitable interest, with no restriction in the deed upon their right to alien it, and no provision that it shall not be taken for their debts, it is liable in equity for their debts. *Warner* v. *Rice*, 66 Md. 436; *Maynard* v. *Cleaves*, 149 Mass. 307; *Baker* v. *Keiser*, 75 Md. 339; *Brown* v. *McGill*, 87 Md. 163; *Brillhart* v. *Mish*, 99 Md.

The parties to the deed in this case have uniformly acted as though the interest of the beneficiaries was an ordinary equitable interest, with the ordinary incidental *jus disponendi*. The present trustee has never directly applied the income, but has paid it over to one of the beneficiaries, upon the authority of all.

Mrs. Powder, whose interest in the income was identical with that of the appellees, and created by the same clause, thought she could assign it, for, before she went into bankruptcy, she deeded her interest to Sarah Danskin; and the appellees must have considered their mother's interest assignable, for they accepted a deed of it from Sarah Danskin. So that it hardly lies in the mouth of the appellees to say that their interest is not assignable, and if it is assignable, it is liable for their debts. *Baker* v. *Kaiser*, 75 Md. 332.

Even if Miss Powder's share is not liable the plaintiff is entitled to Mrs. White's half interest under his judgment against her. *Rippon* v. *Morton*, 2 Beav. 63; 1 *Perry on Trusts*, last paragraph of sec. 386B; 23 *Enc. of Law*, 1 ed., top of page 12; *Rugely* v. *Harrison*, 10 Ala. 703, 742.

The plaintiff has a judgment against Mrs. White; the reason he hasn't a judgment against Miss Powder also, is because the latter lacked a few months of being 21 when she and her sister signed notes for the groceries and meats both had consumed. To allow Miss Powder to throw the whole debt on Mrs. White's interest would be a fraud on the latter, as well

as on the plaintiff. Equity has frequently, under such circumstances, held a party's property liable, where no judgment could be recovered at law. *Sturnfelz* v. *Frickey*, 43 Md. 569; *Girault* v. *Adams*, 61 Md. 1; *Wingert* v. *Gordon*, 66 Md. 106; Under the circumstances averred in the bill, Miss Powder's share of the income, as well as the share of her sister, Mrs. White, should be subjected to the payment of plaintiffs' claims, by a decree such as was passed in *Brown* v. *MacGill*, 87 Md. 163, supposing the trust to be still existing.

But, by the conveyance from Mrs. Powder, through Mrs. Danskin, to her daughters, of all her interest in the income, whereby all the purpose of the trust that was personal to Mrs. Powder is at an end, and the daughters, who are the remainderman, became also the owners of all the life estate; the trust was terminated. *Thompson* v. *Ballard*, 70 Md. 10; *Brillhart* v. *Mish*, 99 Md. 447. And, if so, then the plaintiffs' debt should be paid at once out of the principal in the hands of the trustee.

*Frank Gosnell* and *Geo. Weems Williams* (with whom was *Jas. W. McElroy* on the brief), for the appellee.

In Maryland it is well settled that what are called "spendthrift trusts" may be created. *Smith* v. *Towers*, 69 Md. 88–90; *Md. Grange Agency* v. *Lee*, 72 Md. 161; *Reid* v. *Safe Deposit Co.*, 86 Md. 467; *Brown* v. *Macgill*, 87 Md. 163–4; *Jackson Square Ass'n.* v. *Bartlett*, 95 Md. 661. Spendthrift trusts can be created without employing any particular form of words. All that is necessary is that the creator of the trust must manifest the intention either expressly or impliedly in the instrument creating the trust, that the beneficiaries thereunder shall be entitled to their equitable interests in the trust property, free from the claims of their creditors. *Cherbonnier* v. *Bussey*, 92 Md. 413, 421; *Winthrop Co.* v. *Clifton*, 196 Pa. State, 472.

The deed of trust under consideration denies to the creditors of the beneficiaries any interest in the trust property, for it provides that all the income shall be applied by the trustee

"to the support and maintenance" of the persons named in the deed. The payment of creditors would not be applying the income of the trust estate to the purposes just mentioned, and such payment would not gratify the terms of the trust.

If the contentions of the appellant are sound, and the income should be impounded, the result would be that Mrs. Powder and her two daughters would be deprived of all means of support and maintenance for more than a year in order that their extravagances of former years might be made good. This is exactly what the founder of the trust desired to prevent and intended to guard against. If the appellant can recover for the groceries by obtaining the Court's decree directing the trustee to impound the income until his claim is paid, then there is bestowed thereby upon the beneficiaries of the trust the right *to anticipate* the trust income and make it liable for their debts. If such were the case, the intention of the donor in the trust would be defeated absolutely. No protection whatever would be obtained by the creation of the trust. The case at bar, as can readily be seen, is entirely different from the case of *Pole* v. *Pietsch*, 61 Md. 570.

It is to be observed that there is a discretion vested in the trustee by the terms of the deed of trust under consideration, for it provides that the trustee is to "apply" the income to the support and maintenance of the wife and children of the grantor, and that does not mean that it is to pay all debts of the family incurred for necessaries, and as long as the trustee does so apply the income, the trust is gratified; and as we have seen, a Court of equity will not interfere so long as there is no abuse of the exercise of such a discretion. *Levi* v. *Bergman*, 94 Md. 204, 209; *Milligan* v. *Pleasants*, 74 Md. 8, 14.

The trust has not terminated and the doctrine of merger does not apply for these reasons, namely: (*a*) Because Mrs. Powder had no such interest in the trust estate which could be the subject of conveyance. *Warfield* v. *Gambrill*, 1 G. & J. 503; *Levi* v. *Bergman*, 94 Md. 204, 212; *Baker* v. *Brown*, 146 Mass. 369; *Slattery* v. *Mason*, 151 Mass. 266; *Twopenny* v. *Peyton*, 10 Simmons, 487; *Thompson* v. *Ballard*, 70 Md. 10.

(*b*) Even if the two daughters acquired their mother's interest in the trust estate by means of the conveyances above mentioned, still there would be no merger because there would still be outstanding interests—towit, the interest of the possible grandchildren of the grantor—for the deed provides that "after the death of both of them—*i. c.*, the grantor and his wife—the principal of said estate, and all the increase thereof to become the absolute property of their children, share and share alike, the children of a deceased child to take only their parent's share—that is, the share thereof to which, if living, the parent would be entitled."

It is obvious that the daughters are not the absolute remaindermen. · They may die, and their children, if any, may become entitled to their parent's share. That the deed of trust does not create a vested indefeasable remainder in the daughters. See *Larmour* v. *Rich*, 71 Md. 369; *Small* v. *Small*, 90 Md. 550; *In re Rogers' Trust Estate*, 97 Md. 674.

(*c*) Finally, the doctrine of merger is never applied in a Court of equity when its application will defeat the intention of the parties. The object of the deed of trust was to provide the means of support and maintenance for the grantor therein, his wife and children, so that during the lives of his wife and himself such support and maintenance would be assured and not uncertain. If this is so, allowing the act of one of the beneficiaries of the trust to terminate the trust by conveying her interest, would be to defeat the clearly expressed intention of the donor. Equity will not countenance this. *Wehrane* v. *Safe Deposit Co.*, 89 Md. 179, 189; *In re Rogers' Trust Estate*, 97 Md. 674; *Young* v. *Snow*, 167 Mass. 287.

McSHERRY, C. J., delivered the opinion of the Court.

The questions presented by the record now before us arise on a demurrer to a bill in equity which was filed by the appellant against the appellees, in the Circuit Court of Baltimore City. The demurrer was sustained and the bill was dismissed and from the decree so passed the pending appeal was taken. The facts, which it is necessary to state, are all set forth in the

bill and are, of course, not disputed. It appears that by a deed dated March 25th, 1881, duly executed and recorded, one Moses Hindes Powder conveyed all his property to himself as trustee, in trust to, for and upon the following uses, trusts and purposes, namely: "In trust so that the said Moses Hindes Powder, trustee herein named, shall and will receive take and collect all the rents, issues, income profits and interest of said property hereby conveyed, and from all investments or changes of investments of the same, made or to be made, as hereinafter provided for, and apply the same to the support and maintenance of the said Moses Hindes Powder, and his wife and children, during the lives of the said Moses Hindes Powder and his wife and after the death of both of them, the principal of said estate and all increase thereof to become the absolute property of their children share and share alike, the children of any deceased child to take only their parent's share, that is, that share thereof to which, if living, the parent would be entitled." In the year 1883, the Safe Deposit and Trust Company was substituted as trustee in the place of Moses Powder, and in October, 1894, the latter died.

In March, 1899, Algeria V. Powder, the widow of the settlor, conveyed all her interest under the deed of trust to one Sarah A. Danskin, and in May following the latter transferred the same interest to Beryl D. Powder and Margaret D. White, the only children of the settlor. During the years 1899 and 1900 the plaintiff, Charles G. Wentzel, who is the appellant here, furnished the widow and two daughters, who all lived together, with groceries and provisions, and for the sums due therefor he took the promissory notes of the two daughters and their mother. After parting with her interest in the trust property by the deed above alluded to Mrs. Powder applied for the benefit of the bankrupt law and was discharged from the payment of her debts. The appellant brought suit upon some of the promissory notes. Mrs. Powder pleaded her discharge and Beryl D. Powder, one of the daughters, pleaded infancy, but judgment was obtained against Mrs. White, the other daughter.

The pending bill was then filed, first, to have the trust declared at an end and to subject the property covered by the deed to the payment of the judgment; or, as alternative relief, to have Mrs. White's share of the income impounded and applied in satisfaction of the judgment.  The appellees resist the granting of the relief sought, first, because the trust has not terminated; and, secondly, because the trust created by the deed of 1881 is a spendthrift trust, and the income is therefore beyond the reach of the creditors of the *cestui que trustent.*  We will consider these two propositions in their inverse order.

Is the trust created by the deed a spendthrift trust?  The terms of the deed must furnish an answer to this inquiry.  It will be observed that there are no words used in the deed to indicate an intention on the part of the settlor to make the income inalienable, unless the direction to the trustee to "apply the same to the *support and maintenance* of the said Moses Hindes Powder, and his wife and children during the lives of the said Moses Hindes Powder and his wife" can be interpreted as being sufficient to accomplish that result.  Clearly, as respects the settlor himself neither the words above quoted nor any others could have protected the income from attachment and condemnation at the suit of his creditors.  *Warner et al.* v. *Rice*, 66 Md. 436.  And so it comes down to this: do the words "*support and maintenance,*" the settlor being now dead, preclude the income from being alienated during the lifetime of the widow?  Whenever an individual has an interest in property, which he may alien or assign, that interest, whether it be legal or equitable, is liable for the payment of his debts. "It is wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation, and *generally* whenever property is subject to alienation by the owner it is subject to his debts." *Warner et al.* v. *Rice & Knell*, 66 Md. 440.  We all know that in England it is well settled that the devise of an equitable estate or interest for life to any person, other than to a married woman, carries with it, as a necessary incident, the right of alienation by the *cestui que trust*, and that it is liable for the payment of his

debts, and no provision by way of inhibition, which does not operate as a cessor or limitation over of the estate, can protect it against the claims of creditors. *Smith & Son* v. *Towers*, 69 Md. 84. But in this country the Supreme Court of the United States, the Courts of last resort in some of the States and this Court, have, after full consideration, determined that the power of alienation is not a necessary incident to an equitable estate for life, and that the owner of the property may so dispose of it as to secure its enjoyment by the beneficiary, without making it alienable by him, or liable for his debts. *Smith* v. *Towers, supra; Reid* v. *Safe Dep. & Trust Co.*, 86 Md. 467; *Cherbonnier* v. *Bussey*, 92 Md. 421. The principle which lies at the root of the doctrine, applied for the first time in Maryland, in the case of *Smith* v. *Towers*, is, that the founder of a trust being the absolute owner of the property disposed of, and having the right to prescribe the terms on which his bounty shall be enjoyed, may provide in direct terms that his property shall go to his beneficiary to the exclusion of the latter's alienees and creditors; because such a restriction is not repugnant to the estate or interest granted, nor is it such a restraint on the right of alienation as the law, for reasons of public policy, forbids.

Before proceeding to analyze the language used in the instruments with which this Court dealt in the cases heretofore decided, it will not be amiss to state, in the words of the Supreme Judicial Court of Massachusetts, the general principle applicable to the pending and similar inquiries. In *Slattery* v. *Wilson*, 151 Mass. 268; s. c., 7 L. R. A. 395, it is said: "When the whole income or a definite sum is given to the beneficiary for his support, the whole belongs to him, and is to be applied by him at his discretion, and the expression of the purpose for which it is given is not deemed to be the expression of an intention that the right to secure it shall not be inalienable, but when the right given is for a support out of a fund which is given to another, the right is in its nature inalienable, and the intention of the donor that it shall not be alienated is presumed."

In the deed now under consideration there are no terms to denote an intention or purpose to impose a restraint on the alienation of the income other than the words we have pointed out; namely that the trustee should apply the income to the "support and maintenance" of the *cestui que trustent*, during the lives of the settlor and his wife. Starting with the case of *Smith* v. *Towers*, the words which were there held to create a spendthrift trust were these: The testator devised certain real estate to a trustee in trust to collect the rents and profits, and to pay the same to his son, Robert, "*into his own hands and not into another, whether claiming by his authority or otherwise,*" and upon his death to convey the real estate to the children of the *cestui que trust.* The difference between the phraseology of that will and the deed before us is obvious at a glance and we need not pause to comment on it. In *Md. Grange Agency* v. *Lee*, 72 Md. 161, a testatrix devised all her property, real and personal, to her sons, in trust for the support, maintenance and education of their respective families, to be held by them, and the rents and profits thereof, and she declared that no part of the land should be made liable, in any event, for their debts and contracts ; and it was held that the crops growing thereon were likewise exempted from liability. In *Reid* v. *Safe Dep. & Trust Co.*, 86 Md. 464, it appeared that the testator devised and bequeathed to trustees all his property "in trust, to hold and manage the same and collect, &c., and to pay the net proceeds from time to time to my wife, Louisa Presbury, for the term of her natural life and especially so that the same shall not be liable for the debts or contracts of any future husband, or in any manner subject to his control, *or to be taken in execution or attachment or otherwise howsoever*, and so that she shall not pledge or anticipate said property or said net proceeds of income, or any part thereof." It was said by the Court "These terms are too explicit and clear to be misunderstood," and it was held that the income in the hands of the trustee was not subject to attachment for a debt due by the *cestui que trust.* In *Brown* v. *Macgill*, 87 Md. 161, this state of facts existed: Before her

marriage a woman conveyed her property to a trustee to collect the rents, &c., and to pay the net income to her and "into her own hands and not to another, whether claiming by her authority or otherwise, for her sole and separate use and upon her separate receipts without power of anticipation." After her marriage she became indebted to the plaintiff and charged her separate estate with the payment thereof, and it was held that the trustee under the deed should be required to pay the debt due to the plaintiff, out of the income of the estate in his hands because she could not place her property beyond the reach of her own creditors. In *Jacksou Square Ass. v. Bartlett*, 95 Md. 661, the language of the will, in which a testatrix bequeathed property to a trustee with direction to pay the income to her son, was, "as it shall accrue and not by way of anticipation to my said son for the support of him self and his family, the receipt of my said son to be a sufficient acquittance to my said trustee therefor, but my will is that my said son shall have no power to charge, encumber or anticipate the said income;" and it was held that a spendthrift trust was created and that the interest of the *cestui que trust* in the income was not liable to attachment by his creditors.

The case at bar is in no respect analogous to those where a spendthrift trust has been sustained. There is no provision in the deed attempting to place a restraint on the alienation of the income and there is no prohibition against that income being seized by creditors of the beneficiaries. In point of fact one of the *cestui que trustent* has actually conveyed away her interest in the income to the others. The two daughters are consequently the only beneficiaries entitled to the income. The declaration that the trustee is to apply the income for their maintenance and support is simply the declaration of a general trust for their benefit. And the record shows that the parties have uniformly acted upon that theory. The trustee has never expended the income for the support and maintenance of the beneficiaries. The trustee has merely paid over to one of the beneficiaries at stated periods the income as it accrued and the party thus receiving it expended it. The

debt which the appellant seeks to recover was contracted by the beneficiaries for food, and therefore for articles used in their support and maintenance; and if the interest to accrue on the trust fund is applied to the payment of that debt it will be applied to the support and maintenance of the *cestui que trust.* Here the *whole* income is given to the beneficiaries for their support. The thing given is not a mere right to a support out of a fund; in which event the amount bestowed would be indefinite, and would be in its nature inalienable and beyond the reach of creditors; but the thing given is the whole income without any arbitrary discretion being lodged in the trustee as to its application. Where trustees have an arbitrary power of applying such part of an income as they see fit to the support of a *cestui que trust,* and for no other purpose, it was held that nothing passed to the assignees of the beneficiary. I *Perry on Trusts,* sec. 386B, citing *Twopenny* v. *Peyton,* 10 Sim. 487; *Re Sanderson's Trust,* 3 K. & J. 497; *Lord* v. *Bun,* 2 Y. & C. 98; *Holmes* v. *Penny,* 3 K. & J. 90. In the same section the author continues, "but if the power is not arbitrary, but is imperative on the trustees to pay over the income for the support of the *cestui que trust* and another person or persons, the assignees are entitled to take a part upon the insolvency of one, or the whole in the event of the death of the others," citing *Rippon* v. *Norton,* 2 Beav. 63; *Wallace* v. *Anderson,* 16 Beav. 533; *Percy* v. *Roberts,* 1 Myl. & K. 4.

The case at bar does not fall within the principles applied in any of the decisions heretofore rendered by this Court in sustaining a spendthrift trust, and to bring it within the former rulings on this subject the doctrine imposing a restraint on the alienation of an equitable life estate would have to be expanded and stretched much farther than it has hitherto been carried. As the deed gives the *whole* income for the support and maintenance of the beneficiaries, the whole belongs to them, and the statement of the purpose for which it has been given cannot be deemed an expression of an intention that it shall not be alienable.

*Secondly.* We do not consider that the trust has terminated.

There is a contingent limitation over to the children of the daughters who may come into being during the life of the widow of the settlor, should either of the daughters die leaving issue during the life of the widow.

The conclusion we have reached is that the share of Mrs. White in the income is liable for the payment of the judgment recovered against her. As this view differs from the one reached by the Circuit Court the decree dismissing the bill will be reversed and the cause will be remanded.

*Decree reversed with costs above and below and cause remanded.*

(Decided November 30th, 1904.)