In re Mary Tattersall O'BRIEN a/k/a Mary A. Tattersall, M.D., Debtor.

William C. PARKINSON, Jr., Trustee, Plaintiff,

v.

BRADFORD TRUST COMPANY OF BOSTON, Trustee for Mary Tattersall O'Brien Profit Sharing Retirement Plan and Mary Tattersall O'Brien, Defendants.

Bankruptcy No. 81–01038–R.
Adv. No. 83–0393–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

May 1, 1985.

Page 69

John F. Ames, Richmond, Va., for plaintiff.

W. Stephen Coleman, Kenneth Paciocco, Richmond, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the complaint of the Chapter 7 trustee, William C. Parkinson, Jr., seeking a turnover of certain funds held in a Keogh HR–10 tax qualified retirement plan for self-employed individuals established by the debtor, Mary Tattersall O'Brien. On August 30, 1984, the debtor filed a motion to dismiss the trustee's complaint for failure to state a claim upon which relief could be granted which the Court took under advisement at the commencement of the trial in this matter on September 20, 1984. The trial was thereafter continued until October 26, 1984 at which time the Court heard the evidence of the parties. The Court at the conclusion of the evidence directed the parties to file briefs and stipulations of fact upon which oral argument would be based on January 18, 1985. The hearing on oral argument scheduled for January 18, 1985 was rescheduled to March 4, 1985 at which time the Court heard the argument of counsel. Upon review by this Court of the evidence, briefs, and argument of counsel, as well as the stipulations of fact filed by the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor, Dr. Mary Tattersall O'Brien, is a physician in Richmond, Virginia. The debtor is married to another physician, Dr. John P. O'Brien. Although married, the two maintain separate households, separate household accounts, separate bank accounts, and separate business accounts. Their lives are completely separate with the exception of the filing of income tax returns. The couple files a joint income tax return so that Dr. John O'Brien, who has the greater income of the two, can take advantage of the lesser tax rates for married couples filing joint returns.

The parties stipulated that the debtor was and is a self-employed physician. In order to establish a retirement plan for herself in her capacity as a self-employed physician, the debtor established a Keogh HR–10 retirement income plan on January 1, 1978 with The Massachusetts Cash Management Trust Company, Bradford Trust Company of Boston, a Massachusetts corporation, as trustee for Mary Tattersall, M.D. (a/k/a Dr. Mary Tattersall O'Brien), Profit Sharing Plan Account No. 10–2000–015–626, through Davenport and Company of Virginia, Inc., as custodian. The parties have stipulated that this plan is Dr. Mary T. O'Brien's only retirement plan and that the debtor is the "owner" of the plan. In addition, the parties have stipulated to the following summary of contributions:

## CONTRIBUTIONS TO BRADFORD TRUST COMPANY OF BOSTON
## AS TRUSTEE FOR MARY TATTERSALL, MD.
## PROFIT SHARING RETIREMENT PLAN #10–2000–015–626

| Date | Action | Amount | Tax Year |
|------|--------|--------|----------|
| 1/1/78 | Opening share | 0.00 | 1977 |
| 1/5/78 | Contribution | 1,000.00 | 1977 |
| 5/24/78 | Contribution | 6,500.00 | 1977 |
| 8/6/79 | Contribution | 2,500.00 | 1978 |
| 8/20/79 | Contribution | 2,500.00 | 1978 |
| 9/5/79 | Contribution | 2,500.00 | 1978 |
| | (No contributions in 1980) | | |
| 4/15/81 | Contribution | 4,208.00 | 1980 |
| 6/18/81 | Debtor filed petition for bankruptcy under Chapter 13 | | |
| 8/12/81 | Debtor applied for conversion to Chapter 7 | | |
| 8/18/81 | Debtor's application for conversion to Chapter 7 granted by Court | | |
| 12/8/81 | Debtor granted discharge in bankruptcy pursuant to Chapter 7 | | |
| 12/31/81 | Total pre-petition employer contributions | 19,208.00 | |
| 12/31/81 | Total contributions with dividend reinvestitures | 26,551.39 | |
| | (No contributions in 1982) | | |
| 9/8/83 | Contribution | 298.00 | 1982 |
| 12/15/83 | Contribution | 2,778.00 | 1982 |
| 7/24/84 | Contribution | 1,198.00 | 1983 |
| 8/8/84 | Contribution | 2,000.00 | 1984 |
| 8/20/84 | Contribution | 2,121.00 | 1983 |
| 9/18/84 | Total contributions to date | 27,603.00 | |
| 9/18/84 | Total contributions with dividend reinvestitures | 43,473.32 | |

At the trial on October 26, 1984, the Court requested that the parties further calculate post-petition earnings on post-petition contributions of $8,395. At oral argument on March 4, 1985 the trustee advised the Court pursuant to the Court's request that post-petition earnings on post-petition contributions of $8,395 totaled $294.89. This sum was not objected to by the debtor.

No distribution or withdrawal from the plan has occurred since its inception. However, the debtor retains the right to terminate the trust and withdraw the trust *res* at any time. (¶ 11.1 of the "Terms and Conditions").[1] The only penalty for such action is the payment of back taxes and tax penalties arising from the Keogh plan's ERISA (Employee Retirement Income Security Act of 1974) qualification under I.R.C. § 401(a) (West Supp.1984).

The Chapter 7 trustee, William C. Parkinson, Jr., filed his complaint on December 28, 1983 against (1) the Bradford Trust Company of Boston as trustee for the debtor on her Keogh plan, (2) Davenport & Company of Virginia, Inc. as custodian, and

---

**1.** There are four documents which together make up the debtor's Keogh plan. They are: (1) the Massachusetts Financial Services Prototype Profit Sharing Retirement Plan and Trust; (2) the HR–10 Adoption Agreement; (3) the HR–10 Trust Agreement; and (4) the HR–10 Retirement Plan for Self-Employed Individuals in the MFS Family of Funds and Annuities—Terms and Conditions.

(3) Dr. Mary T. O'Brien, the debtor, for the turnover of pre-petition contributions and pre- and post-petition earnings on those contributions. The trustee also requested punitive damages in the amount of $25,000 plus costs and attorneys fees for the debtor's willful failure to turn over the aforesaid trust proceeds to the trustee.

A review of the bankruptcy petition of the debtor indicates that at no time did the debtor seek to exempt any of the funds contained in the Keogh plan. The debtor did not file a homestead deed claiming any part of the contributions to the plan exempt nor were the funds listed as exempt in Schedule B–4 of the debtor's petition. The debtor has nevertheless maintained throughout this proceeding that no part of the funds contained in the Keogh trust are part of the debtor's estate to which the trustee is entitled. Although the debtor has not formally pled that her Keogh plan is a spendthrift trust subject to exemption from the assets of the estate pursuant to 11 U.S.C. § 541(c), the parties nevertheless briefed the issue and argued it at the hearing on March 4, 1985.

By Order of this Court entered May 1, 1984, the complaint was dismissed as to Davenport & Company of Virginia, Inc. The liability of the Bradford Trust Company of Boston was limited by that same Order to the amount of funds held by it in the trust account for the debtor, together with any accrued interest, dividends, or earnings which the Court might direct be distributed.

On August 30, 1984, the debtor filed a motion to dismiss the trustee's complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The trustee filed his response to the debtor's motion on September 10, 1984. The trial on this matter was initially scheduled for September 20, 1984, but was continued to October 26, 1984 because of unresolved discovery matters. The debtor's motion to dismiss was at that time taken under advisement.

At the trial conducted on October 26, 1984, the Court heard the evidence of the parties. At the conclusion of the trial, the Court directed the parties to file briefs and stipulations of fact. Final oral argument was scheduled for January 18, 1985, but was rescheduled for March 4, 1985. At the hearing on March 4, 1985, the Court heard the argument of counsel and took the matter under advisement. Inasmuch as the Court currently has under advisement both the debtor's motion to dismiss and the merits of the substantive complaint of the trustee, and the Court finding that the substantive issues of each are the same, the Court has considered both simultaneously. Accordingly, the Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

### I.

The question presented in this case is a question of first impression in this district. The issue before the Court is whether or not certain funds placed in a tax-qualified self-employment Keogh retirement trust plan prior to bankruptcy became property of the debtor's estate on the filing of the debtor's Chapter 13 petition in bankruptcy on June 18, 1981; and if so, whether the trustee is entitled to post-petition dividends and earnings on those funds. In making such a determination, the Court must examine first whether the fund became property of the estate on the filing of the petition in bankruptcy, and if so, whether the debtor is entitled to any exclusions or exemptions. Each aspect of the case will be examined *seriatum.*

### A. *Property of the Estate: The Reach of 11 U.S.C. § 541*

With the enactment of the Bankruptcy Code of 1978, Congress sought to broaden the scope of the concept of "property of the estate" to include all assets which the debtor had a "legal or equitable interest" at the time of filing the petition.[2]

2. See in general the discussion of the broadened scope of § 541 of the Code *vis-a-vis* § 70(a) of

11 U.S.C. § 541(a)(1).[3] The effect of that section was to include in a debtor's estate all property which the debtor claimed an interest. Thus, the threshold question in § 541 analysis is whether there exists a "legal or equitable interest" of the debtor in property. This determination is to be made with reference to state law. *See Goff v. Taylor,* 706 F.2d 574, 578 n. 10 (5th Cir.1983); *In re Threewitt,* 20 B.R. 434, 437 (Bankr.D.Kan.1982), *rev'd on other grounds,* 24 B.R. 927 (D.Kan.1982).

■ If such an interest is found to exist, the property becomes property of the estate and automatically passes to the trustee on the filing of the petition in bankruptcy, unless otherwise excluded under applicable provisions of the Code.[4] If the property were excluded under § 541(c)(2) as a spendthrift trust, the property would be considered to have never become property of the estate. *Goff,* 706 F.2d at 579. This is in contrast to the exemptions which may be claimed pursuant to § 522 which affect property already part of the debtor's estate but for which the law allows to be removed from the reach of creditors in order that debtors might not be left destitute from the bankruptcy process.

■ In the case *sub judice,* the Court concludes that under Virginia law, the beneficiary of a Keogh retirement trust plan has both a legal and equitable interest in the trust. The equitable interest arises out of the debtor's status as *cestui que trust. See Broaddus v. Gresham,* 181 Va. 725, 731, 26 S.E.2d 33, 35 (1943) (where the court held that a beneficiary of a trust had an equitable interest in trust property). The legal interest arises out of the debtor's status as settlor of the trust[5] with the right to revoke the trust at any time and recoup the trust *res* and dividend reinvestitures. This latter right is a right by contract and, thus, is legal in nature. *See In re Watson,* 13 B.R. 391, 392 (Bankr.M.D. Fla.1981) (debtor had "legal right" to exercise withdrawal privileges).

The trustee in bankruptcy maintains that with respect to those contributions made to the Keogh plan prior to the filing of the petition in bankruptcy in this Court, those funds are an interest in property of a nature as would pass to the trustee in bankruptcy as property of the estate unless otherwise excluded from the estate as a spendthrift trust pursuant to § 541(c)(2). The stipulations filed by the parties indicate $19,208 in pre-petition contributions which fall within this category.

■ The debtor's argument to the contrary is unpersuasive. The debtor relies on *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), *In re Turpin,* 644 F.2d 472 (5th Cir.1981), and *In re Nunnally,* 506 F.2d 1024 (5th Cir.1975), to persuade this Court to adopt a "balancing

---

the Bankruptcy Act contained in *Goff v. Taylor,* 706 F.2d 574, 578 (5th Cir.1983).

**3.** § 541(a)(1). Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**4.** The exclusion at issue in this case is that found in § 541(c)(2) for spendthrift trusts. *See* the discussion *infra* at pp. 73–76.

**5.** The debtor was not the exclusive contributor to the Keogh plan in this case. The debtor's husband, Dr. John P. O'Brien, also made contributions. The brief by the debtor in this matter

maintains that all pre-petition contributions to the Keogh plan were made by the debtor's husband while all post-discharge contributions were made by the debtor. (Brief of the Debtor/Defendant at pp. 1–2). The trustee disputes this contention. However, the Court is not persuaded that the facts asserted by the debtor even if true justify a conclusion that the debtor's husband is the settlor of the trust as the debtor contends. (Brief of the Debtor/Defendant at p. 10). The parties were married and pooled their income for tax purposes. The evidence is that the Keogh plan effected a tax savings for the couple. The mere fact that some of the checks going to contributions were drawn on the account of Dr. John P. O'Brien does not change the fact that he was her spouse and not her employer. This case involves a self-employment retirement trust in which the self-employed covered individual is both settlor and beneficiary.

test" approach for making determinations of what is or is not property of the estate. This approach would have the courts balance the creditor's interest in securing repayment against the debtor's interest in a "fresh start." *See In re Turpin*, 644 F.2d 472, 474 (5th Cir.1981). This argument ignores the legislative history of § 541 which states that subparagraph (a)(1) of that section overrules *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) upon which *Turpin* relies. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6324; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5868; *see also Goff v. Taylor*, 706 F.2d 574 (5th Cir.1983); *In re Clark*, 18 B.R. 824 (Bankr.E.D.Tenn.1982). Moreover, *Nunnally* and *Turpin* were decided under § 70(a) of the Bankruptcy Act and not under the more expansive definition of property of the estate contained in § 541. These decisions are not persuasive precedent in light of Congressional dissatisfaction with the *Lines v. Frederick* approach. *See In re Clark*, 18 B.R. 824, 829 (Bankr.E. D.Tenn.1982) (the court noting that Congress had effectively overruled *Lines v. Frederick* by enactment of § 541(a)(1) and holding that *Turpin* was both "inapposite" and "distinguishable" from a case under § 541 of the Code).

This Court concludes that the debtor's arguments with regard to the adoption of a balancing test for determining whether property becomes property of the estate must fail for the reason that it would conflict with the expression of intent by Congress in § 541 that all property of which the debtor has a legal or equitable interest should become property of the estate auto-

matically, subject only to the exclusions expressly created by Congress in the Code. Thus, at the time of filing her petition in bankruptcy, the debtor had both a legal and equitable interest in the subject trust. It is these interests which passed to the trustee.

## B. *The 11 U.S.C. § 541(c)(2) Exclusion for Spendthrift Trusts*

Congress provided in § 541(c)(1)[6] that anti-alienation provisions restricting or conditioning the transfer of an interest in property of the debtor would not prevent such interest from becoming property of the estate. An exception was created for spendthrift trusts enforceable under applicable nonbankruptcy law. 11 U.S.C. § 541(c)(2).[7]

Whether Congress intended the term "applicable nonbankruptcy law" to include only state law or was instead meant to include other nonbankruptcy federal law such as ERISA has been the subject of discussion by some courts. *See Lichstrahl v. Bankers Trust*, 750 F.2d 1488, 1490 (11th Cir.1985); *Goff v. Taylor*, 706 F.2d 574, 581–82 (5th Cir.1983); *In re Graham*, 24 B.R. 305 (Bankr.N.D.Iowa 1982). *Cf. In re Threewitt*, 24 B.R. 927 (D.Kan.1982).

The Eleventh Circuit in *Lichstrahl* and the Fifth Circuit in *Goff* concluded from an examination of the legislative history of that section that the phrase "applicable nonbankruptcy law" was intended to be a reference to applicable state law and not a broad reference to all applicable nonbankruptcy federal law. *Lichstrahl*, 750 F.2d at 1490; *Goff*, 706 F.2d at 581–82. The same result was reached in *Graham* where the bankruptcy court found that § 541(c)(2)

---

**6.** § 541(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—
 (A) that restricts or conditions transfer of such interest by the debtor; or
 (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the

appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

**7.** § 541(c)(2). A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

was intended to exclude from property of the estate only traditional spendthrift trusts created under state law. *Graham,* 24 B.R. at 310. In contrast, the district court in *Threewitt* found that limiting § 541(c)(2) to traditional spendthrift trusts gave that section an "unnecessarily narrow construction," *Threewitt,* 24 B.R. at 929, and that inasmuch as Congress chose not to use the term spendthrift trust in the language of the statute, other trusts, including those created under federal law and containing anti-alienation clauses, could likewise be found excluded from the debtor's estate. The district court in *Threewitt* went on to hold that the debtor's ERISA-qualified pension fund was not part of the debtor's estate. *Id.*

This Court finds itself in agreement with the views expressed in the *Lichstrahl, Goff* and *Graham* decisions that § 541(c)(2) was intended by Congress to be directed towards traditional state spendthrift trusts and not to include all trusts containing "spendthrift provisions" as may be allowed or created under federal law. As noted in *Goff,* the House Report states with reference to the proposed Code that:

> The bill also continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under *applicable State law.* The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 176 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6136 (emphasis added). Accordingly, this Court finds that § 541(c)(2) excludes from the debtor's estate only those interests in property which are recognized as spendthrift trusts under applicable state law. The applicable state law in the matter currently before the Court is that of Virginia.

The Commonwealth of Virginia did not recognize the validity of spendthrift trusts until 1919. Va.Code § 55–19 (Repl.Vol. 1981) [8] (formerly Va.Code § 5157, Code of 1919); *see also In re Wilson,* 3 B.R. 439 (Bankr.W.D.Va.1980). In that year, the Virginia legislature created an exception to the doctrine of *Hutchinson v. Maxwell,* 100 Va. 169, 40 S.E. 655 (1902) by allowing the creation of a trust for the support and maintenance of certain beneficiaries which would be exempt from the reach of the beneficiaries' creditors. *See Alderman v. Virginia Trust Co.,* 181 Va. 497, 25 S.E.2d 333 (1943). In construing this provision, the bankruptcy court in *In re Wilson* made the observation that "[i]n order to [create] a valid spendthrift trust [in Virginia], it is essential that the trust comply with the requisites pertaining to its creation and validity. Basically, these elements include a competent settlor and trustee, an ascertainable trust *res,* and certain beneficiaries." *Id.* at 442 (citation omitted).

The trustee argues that the debtor's Keogh plan is not a valid spendthrift trust inasmuch as the settlor of the instant trust is also the beneficiary. The trustee argues that such a trust runs counter to the "strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors." *Judson v. Witlin,* 640 F.2d 661, 663 (5th Cir.1981) (a case concerning whether a Keogh plan became property of the estate under the Bankruptcy Act); *see also Goff v. Taylor,* 706 F.2d 574, 582 (5th Cir.1983) (a case concerning

---

**8.** Virginia Code § 55–19 (Repl.Vol.1981). *Estates in trust subject to debts of beneficiaries; exception for spendthrift trusts.*—Estates of every kind holden or possessed in trust shall be subject to the debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed as in the uses or trusts thereof; but any such estate, not exceeding five hundred thousand dollars in actual value, may be holden or possessed in trust upon condition that the corpus thereof and income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them, but no such trust shall operate to the prejudice of any existing creditor of the creator of such trust.

whether a Keogh plan became property of the estate under § 541 of the Bankruptcy Code). The debtor maintains that the Keogh plan is a valid spendthrift trust under Virginia law because the debtor's husband, Dr. John P. O'Brien, is the settlor of the trust having made all pre-petition contributions to the Keogh plan. However, as previously stated, this Court finds that the debtor is the sole settlor of the trust. Thus, the issue becomes whether or not a spendthrift trust in which the settlor is also the beneficiary may be created in Virginia. For the reasons which follow, the Court holds that such a trust may be created in Virginia, but it is not enforceable against the debtor's creditors or the bankruptcy trustee.

It is well-settled in other jurisdictions that a person cannot establish a spendthrift trust for his own benefit as beneficiary which places assets beyond the reach of his creditors. *Lichstrahl v. Bankers Trust,* 750 F.2d 1488 (11th Cir.1985) (Florida law applicable); *Goff v. Taylor,* 706 F.2d 574, 587 (5th Cir.1983) (Texas law applicable); *Judson v. Witlin,* 640 F.2d 661, 663 (5th Cir.1981) (Florida law applicable); *United States v. Ritter,* 558 F.2d 1165, 1168 (4th Cir.1977) (Widener, J., concurring) (West Virginia law construed); *In re Berndt,* 34 B.R. 515, 518 (Bankr.N.D.Ind.1983) (Indiana law applicable); *In re Clark,* 18 B.R. 824, 830 (Bankr.E.D.Tenn.1982) (Tennessee law applicable); *In re Graham,* 24 B.R. 305, 310 (Bankr.N.D.Iowa 1982) (Iowa law applicable); *In re Threewitt,* 20 B.R. 434, 438 (Bankr.D.Kan.1982), *rev'd on other grounds,* 24 B.R. 927 (D.Kan.1982) (Kansas law applicable); Restatement (Second) of *Trusts* § 156 (1957); 34 ALR2d 1342, § 5. In fact, it has been said that "nowhere will a settlor-beneficiary be protected against creditors by spendthrift provisions in his own trust." *Recent Decisions,* 37 Va.L. Rev. 447, 460 (1951) (*citing Commissioner v. Hall's Estate,* 153 F.2d 172, 174 (2d Cir.1946); *Wenzel v. Powder,* 100 Md. 36, 44, 59 A. 194, 195 (1904); Restatement, *Trusts* § 156 (1935)).

The question is whether or not this is the law in Virginia. Virginia Code § 55–19

states in pertinent part with respect to the creation of spendthrift trusts that "no such trust shall operate to the prejudice of any existing creditor *of the creator* of such trust." (emphasis added). This proviso enacted by the Virginia legislature by its terms prevents a settlor of a spendthrift trust from creating a trust to the prejudice of any existing creditor. It would appear at first blush that this proviso would negate all spendthrift trusts since any trust funded by assets of the settlor would necessarily reduce the assets available to the settlor's creditors for execution or levy. However, this Court need not read the proviso in such a strict and literal manner. A well-known scholar of trusts has interpreted § 55–19 of the Virginia Code to mean that a settlor cannot create a spendthrift trust for himself to the detriment of his creditors. Bogert, *The Law of Trusts and Trustees,* § 223, at pp. 438–40 & n. 99 (1979); Bogert, *Handbook of the Law of Trusts,* Ch. 4, at p. 154 & n. 42 (1973). Thus, the proviso is not to be read as a limitation where the settlor creates a spendthrift trust for the benefit of a third party, even though it too may operate to the prejudice of existing creditors of the settlor.

This Court believes that this construction of Virginia Code § 55–19 is consistent with the purpose of the Virginia legislature in seeking to make valid spendthrift trusts in Virginia while at the same time is consistent with the apparently universal view that a settlor cannot create a valid spendthrift trust for himself enforceable against his creditors.

Finally, the Court finds this construction to be consistent with the decision of the Supreme Court of Virginia in *Petty v. Moores Brook Sanitarium,* 110 Va. 815, 67 S.E. 355 (1910), which held in a case arising prior to the acceptance of spendthrift trusts in Virginia that a settlor cannot be the beneficiary of his own spendthrift trust. *Id.* at 820–21, 67 S.E. 355. Although there might be some question as to the continuing validity of *Petty* after the

1919 amendment to Virginia Code § 5157 (Code of 1919) which validated spendthrift trusts in Virginia, the Court finds that the 1919 amendment only overrules *Petty* to the limited extent of allowing spendthrift trusts, and does not overrule *Petty* for the proposition that a settlor cannot create a spendthrift trust for his own benefit which would be enforceable against his creditors. The conclusion that *Petty* is not overruled *in toto* by Virginia Code § 55–19 is supported by statements of the Virginia Supreme Court in *Petty* itself:

> In the 26 Am. & Eng. Ency. of Law (2d ed.) p. 147, citing numerous authorities in support of the text, the law is stated as follows: 'A donor or settlor cannot, *even in jurisdictions where spendthrift trusts are allowed,* so dispose of his property for his own use, benefit, or support, as to put it beyond the reach of liability for his future debts. If such donor continues *sui juris* and if there appears to be no reason for such disposition, except to withdraw his property from such liability, he cannot through the medium of a trust thus retain the temporal ownership with the usual incidents.'

*Petty,* 110 Va. at 820–21, 67 S.E. at 357 (emphasis added). The Supreme Court went on to remark that "[n]o case has been cited and we are not aware of one which has carried the doctrine of spendthrift trusts to the extent proposed in this case." *Id.* at 821, 67 S.E. at 357.

This Court finds that the amendment to the Virginia Code in 1919 validating spend-thrift clauses and trusts does not by a plain reading of its terms expressly validate the creation of a spendthrift trust for the settlor's own benefit. Rather, the "proviso" clause of that section would seem to indicate an intent by the legislature to prohibit such an attempt to shield assets from creditors, although the clause is by no means clearly to that effect. Accordingly, based upon principles of statutory construction, the Court finds that the common law doctrine espoused in *Petty* survived the 1919 amendment to the extent that it holds unenforceable spendthrift provisions in a trust for the settlor's benefit; and is overruled to the extent that it holds such trusts invalid generally. *See Lewis' Sutherland Statutory Construction,* Vol. II, Ch. XIII, § 573 at 1060 (2d ed. 1904) ("Statutes changing the common law are strictly construed and [the common law] is not further abrogated than the language of the statute clearly and necessarily requires."). This Court believes that should the matter appear before the Virginia Court again, the Court would take a position consistent with the foregoing.

 Consequently, the Court finds that the debtor's Keogh plan retirement trust was created both by the debtor as settlor, and for the debtor's benefit as beneficiary. The Court further finds that the trust documents contain both a revocation clause [9] and an anti-alienation provision,[10] the latter of which is in the nature of a spendthrift clause protecting the trust *res* from the reach of creditors. The Court must hold, however, that the revocable na-

---

9. The Terms and Conditions of the debtor's Keogh plan provide in ¶ 11.1 "Amendment" for revocation of the trust by the following language: "The Employer reserves the right to amend or terminate the Plan in whole or in part...." Other provisions of the debtor's Keogh plan provide that the plan may be revoked at any time, although any revocation prior to the age of 59½ would result in the assessment of taxes on this income and a 10% tax penalty. This Court finds the tax consequences to be insufficient to negate the revocable nature of the trust and accordingly the Court must conclude that the debtor retained "substantial control" over the trust *res* and thus falls within the decision of the bankruptcy court in *In re*

*Shackelford,* 27 B.R. 372 (Bankr.W.D.Va.1983) which held that the debtors' substantial control over funds contained in individual retirement accounts (IRA's) were not excluded from property of the estate under § 541(c)(2).

10. The Terms and Conditions of the debtor's Keogh Plan provide for protection of the trust against creditors in ¶ 12.3 "Non-Assignability of Benefits": "The benefits provided hereunder shall not be subject to alienation, assignment, garnishment, attachment, execution or levy of any kind, and any attempt to cause such benefits to be so subjected shall not be recognized except to the extent required by law...."

ture of the debtor's Keogh trust is incompatible with the idea of a spendthrift trust and that the spendthrift provisions of this trust removing the debtor's assets from the reach of creditors are unenforceable in Virginia as a result of Virginia Code § 55–19 and the continuing vitality of the decision in *Petty.* As a result, the trust does not qualify as a valid traditional spendthrift trust under "applicable nonbankruptcy law" and, therefore, the property cannot be excluded from the debtor's bankruptcy estate pursuant to § 541(c)(2).

C. *Exemptions from the Bankruptcy Estate: 11 U.S.C. § 522(b)*

■ The debtor argued in her motion to dismiss and her brief in support of the motion that her Keogh plan was exempt property under 11 U.S.C. § 522(d)(10)(E).[11] The debtor's argument must fail for several reasons.

First, the federal exemptions contained in § 522(d) are not available to debtors whose domicile in Virginia has made Virginia law the "applicable" law under § 522(b)(1) and (2). Virginia has chosen to opt-out of the federal exemption scheme, Virginia Code § 34–3.1 (Repl.Vol.1984), and limits Virginia residents to the exemptions contained in § 522(b)(2)(A). *See In re Shackelford,* 27 B.R. 372, 373 (Bankr.W.D. Va.1983).

Second, in order to claim the federal exemptions, a debtor must claim the exemption in the petition by filing a list of the property claimed exempt. 11 U.S.C. § 522(1). No such list has been filed in this case.

Finally, there is some question in the authorities as to whether § 522(d)(10)(E) would cover the debtor's Keogh plan. In

*Clark v. O'Neill,* 711 F.2d 21 (3d Cir.1983), the Third Circuit affirmed the bankruptcy court's decision that the debtor's Keogh plan could not be exempted from the estate of the debtor under § 522(d)(10)(E) because the Keogh plan contemplated *future* payments to the debtor while the intent of § 522(d)(10)(E) was the exemption of the *present* right to payment. Thus, if the debtor in that case, then a 43 year-old family therapist, had been over age 59½ and entitled to receive present benefits from the Keogh plan, the court would have allowed the exemption.

A different view was taken in *In re Graham,* 24 B.R. 305 (Bankr.N.D.Iowa 1982) where the court found that "Congress provided an explicit exemption for tax-qualified ERISA funds in § 522(d)(10)(E)." *Id.* at 311 n. 5 (the court considering an ERISA-qualified pension and profit sharing trust). This Court need not resolve this issue here since Virginia Code § 34–3.1 expressly prohibits the taking of the federal exemptions listed in § 522(d) and the debtor listed no property exempt in compliance with § 522(1).

■ The debtor has not argued in this case that the Keogh plan trust *res* has been timely exempted under Virginia law, nor could such an argument succeed. No record of a homestead deed has been filed with this Court indicating that the Keogh plan had been exempted under the applicable provisions of Virginia state law. As a result, the debtor's argument that the Keogh plan is exempt must fail unless the property is exempt under other "Federal law" as allowed by § 522(b)(2)(A). Although the debtor did not specifically raise this issue in briefs or argument, the debtor did make a general reference to exemption

---

**11.** 11 U.S.C. § 522(d)(10)(E). The following property may be exempted under subsection (b)(1) of this section:
(10) The debtor's right to receive—
(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—(i) such plan

or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose; (ii) such payment is on account of age or length of service; and (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. § 401(a), 403(b), 408, or 409).

under § 522(b) which would include § 522(b)(2)(A). Accordingly, this Court feels compelled to give the debtor the benefit of the doubt as to whether the issue was raised. In this regard § 522(b)(2)(A) provides that:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... (2)(A) any property that is exempt *under Federal law, other than subsection (d) of this section....* (emphasis added).

The issue is whether the debtor's ERISA-qualified Keogh plan qualifies as an exemption under "Federal law" other than as found in § 522(d).

The Court finds a difference of opinion among the courts on this issue. The bankruptcy court in *In re Hinshaw,* 23 B.R. 233 (Bankr.D.Kan.1982) concluded that ERISA-qualified plans were of a type similar to the statutory exemptions specifically listed in the legislative history of § 522(b)(2)(A). *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5963, 6316; S.Rep. No. 95–989, 95th Cong., 2d Sess. 75 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5861. As a result, the *Hinshaw* court allowed the debtor to exempt an ERISA-qualified retirement plan pursuant to § 522(b)(2)(A). *Hinshaw,* 23 B.R. at 236.

In contrast, the bankruptcy court in *In re Graham,* 24 B.R. 305 (Bankr.N.D.Iowa 1982) and the Fifth Circuit in *Goff v. Taylor,* 706 F.2d 574 (5th Cir.1983) reached the opposite conclusion. Both the *Goff* and *Graham* courts examined the legislative history of § 522(b)(2)(A) and noted that although ERISA was in effect at the time of enactment of § 522, Congress chose not to list ERISA with the other federal statutory exemptions. *Goff,* 706 F.2d at 585; *Graham,* 24 B.R. at 311–12; *accord Lichstrahl v. Bankers Trust,* 750 F.2d 1488, 1491 (11th Cir.1985). Both courts concluded that the absence of ERISA from the list of exemptions was indicative of Congressional intent not to include ERISA as one of the exemptions allowable under § 522(b)(2)(A) under "Federal law" and consequently denied the claimed exemption. This Court finds it dangerous to attempt to evince Congressional intent from Congressional silence. The fact that the legislative history of § 522(b)(2)(A) does not specifically mention ERISA is not determinative of Congressional intent in light of the fact that the legislative history states with clarity that the list is merely illustrative of items which may be exempted and is not exclusive. Accordingly, if some basis for exclusion of ERISA-qualified plans from the ambit of § 522(b)(2)(A) is to be found, it must rest on a more sound footing.

In both *Goff* and *Graham,* the courts found a valid distinction in the nature of the anti-alienation and assignment provisions of the listed statutes and those of ERISA-qualified pension plans. *Goff,* 706 F.2d at 585; *Graham,* 24 B.R. at 312. In the listed statutes, Congress chose exemptions which contained *absolute prohibitions* on alienation or assignment. This was for the apparent protection of the payee. In contrast, the prohibitions on alienation or assignment under an ERISA plan is optional. The prohibitions only are required to seek the attendant tax benefits. This Court after careful consideration of the matter is not persuaded by the arguments of those courts, finding their interpretation to be without any substantial support in the authorities or legislative history. Rather, if a distinction exists, it should rest on the purpose of exemptions, *viz.,* to exempt from creditor process some portion of the debtor's estate to protect the debtor from being left destitute.

This Court has itself examined the statutes expressly listed in the legislative history to § 522.[12] The exemptions listed in the

---

12. The list of exemptions under Federal law which are expressly listed include: "Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104; [s]ocial security payments, 42 U.S.C. § 407; [i]njury or death compensation payments from war risk hazards, 42 U.S.C. § 1717; [w]ages of fishermen, seamen, and apprentices, 46 U.S.C. § 601; [c]ivil service retirement benefits, 5 U.S.C. §§ 729, 2265; Longshoremen's and Harbor Workers' Compensation

House and Senate Reports appear to relate to the exemption of entitlement benefits which entitle the payee to receive *present periodic payments*, *e.g.*, social security payments, foreign service retirement and disability payments, and do not relate to the exemption of a private, non-entitlement trust *res* from which *future periodic payments* are to be made, as would be the case where a self-employed individual creates an ERISA-qualified Keogh plan for distribution of payments upon obtaining the age of 59½. This Court is of the opinion that the entitlement exemptions under "Federal law" other than § 522(d) as allowed by § 522(b)(2)(A) is limited to those items specifically mentioned in the House and Senate Reports along with other exemptions allowed under Federal law which are in the nature of periodic payments that the debtor is presently receiving or entitled to receive and not to a trust *res* designed for future periodic payment benefits. *Cf. Clark v. O'Neill*, 711 F.2d 21 (3d Cir.1983) (deciding that no exemption was available for a Keogh plan under § 522(d)(10)(E) inasmuch as the latter statute was intended to exempt only the debtor's present right to payment).

In summary, the Court concludes that the debtor's Keogh plan was not properly exempted under Virginia state law by the recordation and filing of a homestead deed in the appropriate jurisdiction. The Court also concludes that the federal exemption of § 522(d)(10)(E) is not available to the debtor in this case, and that the trust *res* of an ERISA-qualified Keogh retirement plan may not be exempted under the provision of § 522(b)(2)(A) for other "Federal law". Accordingly, the debtor's claim of exemption under § 522 should not be allowed.

## II.

As a consequence of the foregoing, the Court finds that (1) the debtor's interest in

her Keogh plan at the time of filing her petition in bankruptcy passed to the trustee and became property of the estate; (2) that the debtor's Keogh plan was not an enforceable spendthrift trust under Virginia law entitling the fund to be excluded from the debtor's estate under § 541(c)(2); and (3) that the debtor's Keogh plan was not entitled to any exemption allowable under § 522(d)(10)(E), § 522(b)(2)(A), or Virginia law. The Court must now consider what portion of the trust *res* and earnings should be turned over to the trustee in bankruptcy and address the issue of liability for payment of income taxes and tax penalties for early withdrawal of funds in the account.

■■■ The parties have stipulated that pre-petition contributions to the debtor's Keogh plan total $19,208. Post-petition contributions total $8,395. Thus, total contributions as of September 18, 1984 were $27,603. The parties have stipulated that total contributions with dividend reinvestitures equaled $43,473.32 as of September 18, 1984. Subtracting the total contributions present on the latter date ($27,603) from total contributions with dividend reinvestitures on the same day ($43,473.32) yields a net earnings on all the debtor's contributions of $15,870.32. Of the total amount, the trustee has calculated at the Court's direction that $294.89 had been earned strictly on post-petition contributions. Accordingly, $15,575.43 is attributable to post-petition earnings on pre-petition contributions through September 18, 1984. The trustee is, of course, not entitled to the debtor's post-petition contributions nor any earnings therefrom. However, the trustee is entitled to recover post-petition earnings on pre-petition contributions, including the $15,575.43 in earnings through September 18, 1984 as well as those post-petition earnings attributable to pre-petition contributions accruing from September 18, 1984 to

Act death and disability benefits, 33 U.S.C. § 916; Railroad Retirement Act annuities and pensions, 45 U.S.C. § 228(L); [v]eterans benefits, [38 U.S.C. § 770(6) ]; [s]pecial pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101; and [f]ederal home-

stead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175." H.R.Rep. No. 95–595, 95 Cong., 1st Sess. 360 (1977); S.Rep. No. 95–989, 95 Cong., 2d Sess. 75 (1978), U.S. Code Cong. & Admin.News 1978, 5861, 6316.

the date the property is turned over to the trustee, and not just simple interest as the debtor has maintained. *See* 11 U.S.C. § 541(a)(6); *see also Clark v. O'Neill,* 711 F.2d 21, 23 (3d Cir.1983) (the court rejecting the debtor's assertion that post-petition earnings from a Keogh plan were exempt property).

As a result, the Court finds that the trustee is entitled to have turned over to him as property of the estate the sum of the following figures: (1) $19,208 representing pre-petition contributions to the debtor's Keogh plan, (2) $15,575.43 representing dividend reinvestitures on pre-petition contributions up to and including September 18, 1984, and (3) an amount representing the trustee's *pro rata* portion of dividend reinvestitures from September 18, 1984 until the present. Consequently, the trustee is entitled to judgment on his complaint in the amount of $34,783.43 as of September 18, 1984 plus any additional earnings which may have accrued in his favor. The debtor is entitled to retain in her Keogh plan $8,395 representing post-petition contributions, $294.89 in post-petition earnings on those contributions through September 18, 1984, plus her *pro rata* portion of earnings from September 18, 1984 to the present.

The final question before the Court is the issue of the assessment of income taxes and tax penalties for early withdrawal of the funds from the Keogh plan and whether the debtor or the trustee will be required to bear the burden. The Court concludes that the issue is not ripe at present because no taxes or penalties have been assessed by the Internal Revenue Service against either party. Congress has committed the assessment of tax liability to the Commissioner of Internal Revenue and, thus, it would be inappropriate for this Court to make such an assessment. *See Goff v. Taylor,* 706 F.2d 574, 580 n. 16 (5th Cir.1983). Moreover, the Internal Revenue Service is not a party to this proceeding. Finally, the Court questions its jurisdiction to entertain a tax claim which may more properly belong in another forum. *Cf. In re Graham,* 24 B.R. 305, 313 (Bankr.N.D.Iowa 1982) (trustee entitled to "lump sum payment of [debtor's] interest, subject to whatever ERISA taxes and penalties may be imposed"). Accordingly, this Court declines to rule on the tax implications of the trustee's complaint for turnover of property to the debtor's estate.

■ In summary, the Court finds that the trustee's complaint states a claim upon which relief may be granted, and the debtor's motion to dismiss should accordingly be denied. The Court further finds that the trustee is entitled to judgment in the amount of $34,783.43 on his complaint plus earnings from September 18, 1984 to the present. However, the Court finds that the trustee's request for punitive damages in the amount of $25,000 plus costs and attorney's fees is not appropriate in this case and consequently that portion of the trustee's complaint is denied.

The trustee is directed to prepare and submit an appropriate Order in conformity with this Memorandum Opinion. The Order shall include a current determination of those funds held by the Bradford Trust Company of Boston which are attributable to dividends earned subsequent to September 18, 1984 on the trustee's portion of the fund ($34,783.43), and shall direct the turnover of $34,783.43 plus the additional earnings to the trustee in bankruptcy.